# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MICHIGAN

_____

JAMES A. DUFFY,

      Plaintiff,

vs.

ENAGON, LLC, a Michigan limited liability
company; TERRANCE L. EBELS, an individual;
MARTINEAU, HACKETT, O'NEIL & KLAUS, a
Professional Limited Liability Company; and
JEFFREY J. KLAUS, an individual

      Defendants.

Case No. 1:22-cv-00124-PLM-RSK

Honorable Paul L. Maloney

---

| | |
|---|---|
| Timothy James O'Keefe | Mark H. Zietlow (P37022) |
| CATANZARITE LAW CORPORATION | INNOVATIVE LAW GROUP |
| 2331 West Lincoln Avenue | 388 Garden Ave., Suite 140 |
| Anaheim, California 92801 | Holland, Michigan 49424 |
| T: (714) 520-5544 | T: (616) 392-4100 |
| F: (714) 520-0680 | E: mark@innovative.lawyer |
| E: tokeefe@catanzarite.com | Attorneys for Defendant |
| Attorneys for Plaintiff | |

---

## ANSWER AND AFFIRMATIVE DEFENSES
## OF DEFENDANTS ENAGON LLC AND TERRANCE L. EBELS

Defendants Enagon. LLC, a Michigan limited liability company ("Enagon") and Terrance L.

Ebels ("Ebels") (Enagon and Ebels are collectively referred to herein as "Defendants"), file their

Answer to Plaintiff's Complaint as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff, James A. Duffy, also known as James Duffy and Jim Duffy ("Duffy"), is now

    and at all times relevant was a resident and domiciliary of the State of Washington.

**Neither admitted nor denied for the reason that Defendants are without sufficient information to respond to this allegation and leave Plaintiff to its proofs.**

2. Defendant, Enagon, LLC ("Enagon") is a Michigan limited liability company organized May 1, 2013 bearing Identification Number: 801703263(Old ID Number: E21901) is a citizen of the State of Michigan doing business as a manufacturing company of machine tools from its Allegan County offices located at 3381 Blue Star Highway, Saugatuck, MI 49453.

**Admitted, with the exception that Enagon manufactures equipment.**

3. Defendant Terrance L. Ebels, also known as Terry Ebels ("Ebels"), is an individual, a Michigan resident residing in Holland, Michigan, and is the Manager of Enagon and its controlling owner.

**Admitted.**

4. Defendant Martineau, Hackett, O'Neil & Klaus, is a Professional Limited Liability Company ("Martineau Firm") engaged in the practice of law, with its principal office at 555 N Main St, Mount Pleasant, Michigan, and satellite offices located at 11512 North Straits Highway Cheboygan, Michigan and 127 West 4 Street, Clare Michigan.

**Neither admitted nor denied for the reason that Defendants are without sufficient information to respond to this allegation and leave Plaintiff to its proofs.**

5. Defendant Jeffrey J. Klaus ("Klaus") an individual, is an attorney at law admitted to practice before the Bar of the State of Michigan, is a Michigan resident, and is employed by defendant Martineau, Hackett, O'Neil & Klaus, a Michigan law firm domiciled in Michigan with its offices as stated above.

**Neither admitted nor denied for the reason that Defendants are without sufficient information to respond to this allegation and leave Plaintiff to its proofs.**

6. Pursuant to 28 U.S.C. § 1332(a) there is complete diversity of citizenship between Plaintiff on the one hand and Enagon, Ebels, Martineau Firm and Klaus on the other hand and the amount at issue is not less than $75,000.

**Neither admitted nor denied for the reason that Defendants are without sufficient information to respond to this allegation and leave Plaintiff to its proofs.**

7. This action also arises under Sections 10(b), 20A, and 20(a) of the Exchange Act of 1934, as amended, 15 U.S.C. §§ 78j(b), 78t-l, and 78t, and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder.

**Neither admitted nor denied for the reason that Defendants are without sufficient information to respond to this allegation and leave Plaintiff to its proofs.**

8. This Court has jurisdiction over the action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

**Neither admitted nor denied for the reason that Defendants are without sufficient information to respond to this allegation and leave Plaintiff to its proofs.**

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act, 15 U.S.C. § 78aa. Enagon maintains its principal place of business in this District. Certain of the acts and conduct complained of herein, including dissemination of materially false and misleading information, occurred in this District.

**Neither admitted nor denied for the reason that Defendants are without sufficient information to respond to this allegation and leave Plaintiff to its proofs. In further**

**answer, Defendants deny that any materially false or misleading information was disseminated by Defendants in this District.**

10. Venue is also proper in this Court under 28 U.S.C., § 1391 because the events giving rise to the claims occurred in this District.

    **Neither admitted nor denied for the reason that Defendants are without sufficient information to respond to this allegation and leave Plaintiff to its proofs.**

### FACTUAL ALLEGATIONS

11. In mid-February 2020, Lee Schunk and Mike Schunk, who are not parties in this action (separately sometimes "Mike" and "Lee" and jointly referred to herein as "Schunks") telephoned Duffy at his residence in Washington state. Schunks knew Duffy from Duffy's prior passive investment loans to Amerihemp, LLC ("Amerihemp"), a Michigan limited liability company in 2019 and 2020 then engaged in hemp farming and processing.

    **Neither admitted nor denied for the reason that Defendants are without sufficient information to respond to this allegation and leave Plaintiff to its proofs.**

12. Schunks explained their purpose was to solicit Duffy for his investment in the membership interests in M-61 Processing, LLC (M61) a Michigan limited liability company formed February 21, 2020.

    **Neither admitted nor denied for the reason that Defendants are without sufficient information to respond to this allegation and leave Plaintiff to its proofs.**

13. Schunks told Duffy they, through M61, planned to purchase equipment, specifically three stainless steel sonic mills and related attachments, to commercially process hemp and

other agricultural plant material (collectively the Equipment) that would convert biomass into a commercially useful powder for numerous applications.

**Neither admitted nor denied for the reason that Defendants are without sufficient information to respond to this allegation and leave Plaintiff to its proofs.**

14. In the same conversation, Schunks explained to Duffy that because M61 was newly organized with insufficient startup capital to purchase the Equipment needed to execute the M61 business plan, they intended to finance the Equipment purchase with a loan from SCL1, LLC (SLC), an equipment finance company located in Denver, Colorado.

**Neither admitted nor denied for the reason that Defendants are without sufficient information to respond to this allegation and leave Plaintiff to its proofs.**

15. Schunks further told Duffy they had arranged that SLC would meet in Michigan to determine if it would make the loan to M61 to purchase the Equipment.

**Neither admitted nor denied for the reason that Defendants are without sufficient information to respond to this allegation and leave Plaintiff to its proofs.**

16. Schunks invited Duffy to an in-person meeting in Michigan with Enagon, the Equipment's manufacturer. They informed Duffy that Ted M. Harris (Harris), a principal officer of SLC, and Ebels, who was believed to be the sole member and manager of Enagon, would be present with Mike to explain the investment opportunity.

**Neither admitted nor denied for the reason that Defendant is without sufficient information to respond to this allegation and leaves Plaintiff to its proofs.**

17. Schunks also told Duffy in that same telephone conversation that if he attended, he'd see a demonstration of a smaller prototype version of the three sonic mills to be purchased by M61 and would hear Ebels and Mike discuss the merits of the proposed

enterprise, the attractiveness of the investment, how the membership interests would be issued, how the business operations would be structured and financed and the forecast results of operations.

**Neither admitted nor denied for the reason that Defendant is without sufficient information to respond to this allegation and leaves Plaintiff to its proofs.**

18.     Duffy demurred, explaining he was old, at that time age 84, retired and was not looking for new business or investment opportunities. He also told Schunks he had no discretionary capital to invest and would have to borrow funds if he were to participate. Schunks told him no cash would be required because SLC would loan M61 the funds to purchase the Equipment from Enagon.

**Neither admitted nor denied for the reason that Defendant is without sufficient information to respond to this allegation and leaves Plaintiff to its proofs.**

19. Duffy finally agreed to go to Michigan to see the Equipment demonstrated and hear about the investment opportunity from Ebels and Mike Schunk. He traveled there on February 25, 2020 and attended three days of meetings including viewing a smaller prototype sonic mill demonstration.

**Neither admitted nor denied for the reason that Defendant is without sufficient information to respond to this allegation and leaves Plaintiff to its proofs.**

20. During the course of the three-day visit, Duffy met Ebels, Schunks and the lender SLC. Duffy also met with Klaus.

**Neither admitted nor denied for the reason that Defendant is without sufficient information to respond to this allegation and leaves Plaintiff to its proofs.  If**

**Plaintiff attended any meetings with Ebels, he did not identify why he was there and did not participate in the meeting.**

21. During initial meetings with Mike Schunk the investment opportunity was further reviewed.

**Neither admitted nor denied for the reason that Defendant is without sufficient information to respond to this allegation and leaves Plaintiff to its proofs.**

22. On February 26, 2020 following a breakfast meeting, Duffy, Mike Schunk and Harris met at Enagon's offices and toured its operations. The visit began with a long meeting in Ebels' office, during which he extolled the merits of his patented sonic mill, that it would be a very good investment opportunity, that the Equipment was unique, how the processing equipment worked and the expected level of output from the three sonic mills that were to be purchased by M61. Ebels and Mike Schunk discussed in detail matters probing the utility and use of the Equipment, and the market for the powder output. Ebels openly and at length discussed the merits of the Equipment as an investment and the revenues to be generated by the processing output and resulting product. Ebels and Mike Schunk spoke of the expected or forecast results.

**Defendants deny each and every of the allegations because they are untrue.  In further answer, the transaction documents and delivery schedule were entered into, and speak for themselves, in establishing the falsity of Plaintiff's allegations. In further answer, if Plaintiff attended any meetings with Defendants, he did not identify why he was there and did not participate in the meeting.**

23. Duffy alleges that in order to finance the Equipment purchase, Enagon-Ebels and M61-Schunks conspired against him to overstate the Manufacturers Suggested Retail Price

("MSRP") by creating a bogus contract and related invoice at $4,000,000. They did so in order to deceive not only Duffy as to the value of the Equipment but also SLC which had a requirement that it could not loan more than 50% of MSRP.

**Defendants deny each and every of the allegations because they are untrue.  In further answer, the transaction documents and delivery schedule were entered into, and speak for themselves, in establishing the falsity of Plaintiff's allegations. Denied for the reason that Defendants do not make any reference to "Manufactured Suggested Retail Price" or "MSRP" and have never conspired with any of the named parties.  In further answer, if Plaintiff attended any meetings with Defendants, he did not identify why he was there and did not participate in the meeting.  Defendants were unaware that Plaintiff had any interest in equipment or investing in equipment.  In further answer, the allegation is denied because Defendants lack knowledge about the requirements of SLC.**

24. On the basis of the falsely constructed contract and MSRP, Mike Schunk and Ebels explained that Enagon would sell the Equipment to M61 for $4,000,000 with $2,000,000 borrowed from SLC and a further $2,000,000 subordinated loan from Enagon to M61. M61 would then receive the Equipment for use in its operations to generate revenue from selling the powder product from M61's biomass processing operations creating cash flow for the $106,000 monthly payments to SLC and create a reserve to pay Enagon's principal and accrued interest on its loan within thirty-six months. Duffy had no knowledge of the scheme including the bogus $4,000,000 contract and MSRP.

**Defendants deny each and every of the allegations because they are untrue.  In further answer, the transaction documents and delivery schedule were entered into,**

and speak for themselves, in establishing the falsity of Plaintiff's allegations. In further answer, these statements could not have been made at the alleged meeting because Defendants did not know whether SLC would provide financing nor did they know what the terms and conditions would be. In further answer, if Plaintiff attended any meetings with Defendants, he did not identify why he was there and did not participate in the meeting.

25. At that February 26, 2020 meeting, Ebels, Mike Schunk and Duffy as well as Harris of SLC saw the smaller demonstration model of the sonic mill processing equipment operated. Ebels and Mike Schunk discussed the capitalization and forecast of M61 operations, satisfactorily insofar as Duffy could determine.

Defendants deny each and every of the allegations because they are untrue.  In further answer, the transaction documents and delivery schedule were entered into, and speak for themselves, in establishing the falsity of Plaintiff's allegations  Denied for the reason that Defendants did not know of any capitalization or forecast of M61 operations, and did not discuss such at any alleged meeting with Plaintiff. In further answer, if Plaintiff attended any meetings with Defendants, he did not identify why he was there and did not participate in the meeting.

26. Enagon, Ebels and Mike mutually expressed a most favorable impression of the proposed investment, Enagon's equipment demonstration, the product output, and the forecasts Schunks had prepared.

Defendants deny each and every of the allegations because they are untrue.  In further answer, the transaction documents and delivery schedule were entered into, and speak for themselves, in establishing the falsity of Plaintiff's allegations  In

**further answer, denied for the reason that Defendants had no knowledge of any proposed investment by Plaintiff. In further answer, if Plaintiff attended any meetings with Defendants, he did not identify why he was there and did not participate in the meeting.**

27. Following the demonstration, there was a much longer followup meeting in Ebels' office involving Ebels, Harris, Mike Schunk and Duffy, during which Ebels explained what the demonstration model at scale with the three larger sonic mills would produce in terms of output. SLC indicated that it would consider providing the $2,000,000 of financing based upon the $4,000,000 contract and MSRP as well as the Ebels demonstration and explanation of the output forecast. Ebels and Mike Schunk on the basis of the output numbers both opined that the revenue projections were reasonably based, such that the projected revenue would readily cover the SLC loan payments and a reasonable reserve for the subordinate loan payoff due Enagon. Ebels made clear that the Mike forecasts for M61 were reasonably based for the Equipment he was selling at a claimed MSRP of $4,000,000.

**Defendants deny each and every of the allegations because they are untrue.  In further answer, the transaction documents and delivery schedule were entered into, and speak for themselves, in establishing the falsity of Plaintiff's allegations.  In further answer, denied for the reason that at that time, Defendants had no knowledge of any SLC loan, any SLC loan payments, or any reserve. In further answer, if Plaintiff attended any meetings with Defendants, he did not identify why he was there and did not participate in the meeting.**

28. While Duffy was present for the foregoing discussions, he had no knowledge or experience regarding the area of investment or the machinery, and was incapable alone of analyzing the business plan to form an opinion as to whether the product output and forecasts were reasonable. In a word, Duffy relied on the purported expertise and opinions of Ebels and Mike.

**Defendants deny each and every of the allegations because they are untrue.  In further answer, the transaction documents and delivery schedule were entered into, and speak for themselves, in establishing the falsity of Plaintiff's allegations. Further denied for the reason that Plaintiff could not have relied on any opinion because he did not participate in the meeting.  Defendants had no knowledge as to who Plaintiff was or, if he was there, why he was there.**

29. Following the last meeting of that day Harris informed Mike Schunk and Duffy that he would approve an SLC loan for $2,000,000 for the purchase of the Equipment from Enagon, for M61's use, and would require guarantees by its members but still needed to see M61's organizational documents and obtain formal approval from his SLC partners. Harris stated he fully expected that the SLC Equipment loan to fund the purchase from Enagon would be quickly approved based upon the $4,000,000 MSRP such that the M61 members needed to promptly complete the M61 company documentation.

**Defendants deny each and every of the allegations because they are untrue.  In further answer, the transaction documents and delivery schedule were entered into, and speak for themselves, in establishing the falsity of Plaintiff's allegations  In further answer, if Plaintiff attended any meetings with Defendants, he did not identify why he was there and did not participate in the meeting. In further answer,**

**Defendants deny the allegations because they are untrue, for the reasons set forth in the prior answers.**

30. With SLC's $2,000,000 funding to M61 forthcoming, on February 27, 2020 Duffy went with Schunks to Martineau Firm's Clare, Michigan office to meet with Klaus, whom Schunks had selected to organize and represent M61 and its members. Klaus affirmed he'd been retained and was introduced to Duffy as a savvy and experienced business and transaction attorney on whom Schunks and Duffy could rely.

**Defendants deny each and every of the allegations because they are untrue. In further answer, the transaction documents and delivery schedule were entered into, and speak for themselves, in establishing the falsity of Plaintiff's allegations. In further answer, if Plaintiff attended any meetings with Defendants, he did not identify why he was there and did not participate in the meeting. In further answer, Defendants deny the allegations because they are untrue, for the reasons set forth in the prior answers.**

31. At that meeting, Schunks briefed Klaus on the transactional terms set out in paragraphs 32 through 35 inclusive.

**Defendants deny the allegations because they are untrue, for the reasons set forth in the prior answers.  In further answer, if Plaintiff attended any meetings with Defendants, he did not identify why he was there and did not participate in the meeting. Defendants had no knowledge of what Plaintiff could determine.**

32. The transaction would involve a multi-step process: first, M61 would purchase the Equipment (the three sonic mills) from Enagon as manufacturer and seller pursuant to a

contract with a $4,000,000 purchase price which was represented to be the MSRP or an average $1,333,333 per sonic mill.

**Defendants deny each and every of the allegations because they are untrue.  In further answer, the transaction documents and delivery schedule were entered into, and speak for themselves, in establishing the falsity of Plaintiff's allegations.  In further answer, Defendants deny the allegations because they are untrue, for the reasons set forth in the prior answers.**

33. Enagon would be paid the $4,000,000 MSRP by M61 as follows: $2,000,000 which it borrowed from SLC with the payment made by M61 authorization directly by SLC to Enagon and a second $2,000,000 loan from Enagon to M61 payable three years later with interest at 1% per annum.

**Defendants deny each and every of the allegations because they are untrue.  In further answer, the transaction documents and delivery schedule were entered into, and speak for themselves, in establishing the falsity of Plaintiff's allegations. In further answer, Defendants deny the allegations because they are untrue, for the reasons set forth in the prior answers.**

34. M61 would receive the Equipment from Enagon upon payment from SLC on its behalf and M61 would operate the Equipment in its leased space in order to generate revenue from which it would in turn pay its operating expenses, make the $106,000 per month payments to SLC, establish a reserve to pay the $2,000,000 payment to Enagon with interest and return a profit to the M61 members.

**Defendants deny each and every of the allegations because they are untrue.  In further answer, the transaction documents and delivery schedule were entered into,**

13

and speak for themselves, in establishing the falsity of Plaintiff's allegations.  In
further answer, Defendants deny the allegations because they are untrue, for the
reasons set forth in the prior answers..

35. In order for M61 to enter into the SLC $2,000,000 loan, its three members,
Michael Schunk, Lee Schunk and Duffy would personally guarantee the
Equipment loan.

**Neither admitted nor denied for the reason that Defendant is without sufficient
information to respond to this allegation and leaves Plaintiff to its proofs. In further
answer, if Plaintiff attended any meetings with Defendants, he did not identify why
he was there and did not participate in the meeting.**

36. Further at the Klaus meeting, Klaus learned and other wise knew those facts
described in paragraphs 37 to 39 inclusive below.

**Neither admitted nor denied for the reason that Defendant is without sufficient
information to respond to this allegation and leaves Plaintiff to its proofs.**

37. Ebels and Schunks knew that of M61's three members, only Duffy was financially
responsible for the $2,000,000 SLC loan and although he was 84 years of age and retired
from business they knew he had a substantial property and investments portfolio.

**Defendants deny each and every of the allegations because they are untrue.  In
further answer, the transaction documents and delivery schedule were entered into,
and speak for themselves, in establishing the falsity of Plaintiff's allegations. In
further answer, if Plaintiff attended any meetings with Defendants, he did not
identify why he was there and did not participate in the meeting. Defendants had no
knowledge of who Plaintiff was.**

14

38. As Ebels and Klaus also well knew, Schunks, on the other hand, were modest farmers and equipment sales people with few assets, and the size and complexity of the Equipment loan transaction and the business in which M61 proposed to engage was completely outside of their experience.

**Defendants deny each and every of the allegations because they are untrue.  In further answer, the transaction documents and delivery schedule were entered into, and speak for themselves, in establishing the falsity of Plaintiff's allegations.  In further answer, Defendants deny the allegations because they are untrue, for the reasons set forth in the prior answers.  In further answer, if Plaintiff attended any meetings with Defendants, he did not identify why he was there and did not participate in the meeting. Defendants had no knowledge of who Plaintiff was.**

39. While Klaus listened and spoke favorably to Duffy about the Schunks as managers and operators, he knew or reasonably should have known the proposed Equipment purchase transaction was beyond their capability, that Duffy had no knowledge regarding the bona fides of the proposed transaction and, as a resident of the State of Washington, would have no day-to-day involvement in M61's business.

**Neither admitted nor denied for the reason that Defendant is without sufficient information to respond to this allegation and leaves Plaintiff to its proofs.**

40. From the information he obtained in the meeting, Klaus necessarily realized that neither Duffy nor Schunks understood the significantly adverse, material risks associated with such a highly leveraged equipment finance transaction, and the strong potential of the members', particularly Duffy's personal guaranty being called. In fact, Klaus knew or reasonably should have known that this Equipment purchase at $4,000,000, of which

15

100% was financed, with the M61 loans of not more than $250,000 discussed below

coming from Duffy, was in substance a 100% leveraged investment requiring payments to

SLC exceeding $106,000 per month, was very high risk and not suitable for Duffy. Yet, he

did not provide a warning or disclosure, and failed to caution Duffy regarding the high risk

and the unsuitability of the proposed transaction.

**Neither admitted nor denied for the reason that Defendant is without sufficient**

**information to respond to this allegation and leaves Plaintiff to its proofs.**

41. Duffy would not be working in M61's office but would instead be in Washington as a

passive investor with no control, and would be entirely reliant and dependent upon the

majority and controlling member the Schunks, for operational and management expertise

and to generate a return for M61 and its members.

**Neither admitted nor denied for the reason that Defendant is without sufficient**

**information to respond to this allegation and leaves Plaintiff to its proofs.**

42. While formation documents for M61 were discussed, none were reviewed because they

had not yet been prepared. However, the structure was to be that Duffy would have only a

34% passive membership interest but would sign a full, 100% guaranty of the SLC

finance transaction.

**Neither admitted nor denied for the reason that Defendant is without sufficient**

**information to respond to this allegation and leaves Plaintiff to its proofs.**

43. Klaus knew that a guaranty from Schunks would be worthless as they had no assets of any

substance but would rely entirely on Duffy's Guaranty and capital for the big return from

the biomass processing venture Schunks were advocating.

**Neither admitted nor denied for the reason that Defendant is without sufficient information to respond to this allegation and leaves Plaintiff to its proofs.**

44. Klaus discussed how the membership interests would be allocated, with Schunks explaining they would have a 66% ownership interest and Duffy having a minority 34% ownership interest despite his 100% guaranty to SLC being the only one of value.

**Neither admitted nor denied for the reason that Defendant is without sufficient information to respond to this allegation and leaves Plaintiff to its proofs.**

45. Objectively, Klaus either knew or would have realized that Duffy's net worth was the sole basis for SLC's participation and loan to acquire the Equipment, and that Duffy was being induced to put his capital at risk for Schunks' benefit through M61, in the obviously high-risk venture.

**Neither admitted nor denied for the reason that Defendant is without sufficient information to respond to this allegation and leaves Plaintiff to its proofs.**

46. Klaus discussed that additional documentation, including an operating agreement for M61, would be necessary and that he or another attorney from Martineau Firm would prepare the documents.

**Neither admitted nor denied for the reason that Defendant is without sufficient information to respond to this allegation and leaves Plaintiff to its proofs.**

47. Further at the meeting Schunks, Duffy and Klaus discussed initial capitalization as well as possible funding shortfalls up to $250,000 and that initial loan money of $95,000 would be required. Klaus informed Duffy he could lend money and other funds for operational requirements, and that he, Klaus, would document the loans to be repaid out

of M61's income. Klaus did not, however, inform or suggest to Duffy that he should not make the loans nor acquire the membership interests and not provide the guaranty.

**Neither admitted nor denied for the reason that Defendant is without sufficient information to respond to this allegation and leaves Plaintiff to its proofs.**

48. Klaus did not indicate that there was a conflict of interest between Duffy on the one hand and Schunks on the other for at least two reasons: (1) Duffy's personal guaranty was the sole basis of the SLC loan agreement, and (2) Duffy's loans to M61 were disproportionate to his 34% interest. Klaus was required to notify Duffy in writing of these serious unwaivable conflicts.

**Neither admitted nor denied for the reason that Defendant is without sufficient information to respond to this allegation and leaves Plaintiff to its proofs.**

49. Martineau Firm and Klaus did not have Duffy sign a retainer agreement for any of the legal work to be performed nor did it or Klaus document or even acknowledge the facially obvious conflict of interest presented by Duffy's personal guaranty of a transaction of which 66% of the benefit therefrom would inure to Schunks, the personal loans to M61 without documentation and over which they would have complete operational control.

**Neither admitted nor denied for the reason that Defendant is without sufficient information to respond to this allegation and leaves Plaintiff to its proofs.**

50. On Friday February 28, 2020, in keeping with the advice and counsel of Martineau Firm and Klaus, Duffy wired $95,000 to M61's bank account. Duffy, based upon that same advice, continued to make loans to M61 in keeping with the business plan adopted at Martineau Firm's office, as follows: $5,000 on February 27, $5,000 on March 25, 2020;

$30,000 on July 6, 2020; $40,000 on August 24, 2020; $30,000 on September 3; $20,000

on September 25, 2020 and $25,000 on November 4, for total loans of $250,000 for

operations. None of those loans have been repaid, M61 is out of business with a

$2,200,000 judgment and is a total loss. All of the loans were made pursuant to Klaus'

supervision, oversight and counsel.

**Neither admitted nor denied for the reason that Defendant is without sufficient**

**information to respond to this allegation and leaves Plaintiff to its proofs.**

51. As Duffy understood the business arrangement after attending the meeting with Klaus on

February 27, 2020:

    a.    Schunks would own 66% of M61 and Duffy would own 34%.

    b.    SLC would initially pay Enagon $2,000,000 for the M61 purchase of the

Equipment with an MSRP of $4,000,000;

    c.    In consideration of such payment Enagon would promptly deliver or make

available for delivery the Equipment to M61 at its place of business in Gladwin, Michigan;

    d.    SLC would have a security interest in the Equipment to secure the loan

payments;

    e.    Duffy would lend to M61, as above stated at paragraph 50, all to be repaid

according to documentation Klaus was to prepare;

    f.    M61 was forecast to profitably operate the Equipment from processing

hemp and possibly other agricultural materials into a marketable powder; and that

from operating income M61 would pay its operating expenses, make the monthly loan payments of $106,000 to SLC, would repay Duffy's loans, and would create a reserve fund with which to timely pay in 36 months M61's second subordinated $2,000,000 promissory note due to Enagon for the balance of the $4,000,000 Equipment purchase price, its MSRP.

**Neither admitted nor denied for the reason that Defendant is without sufficient information to respond to this allegation and leaves Plaintiff to its proofs.**

52. Martineau Firm and Klaus, representing M61 and its members, sent the organization documents by email attachment to Duffy in Washington, to be signed and returned. Duffy's signature documents were sent to Washington where he printed them out and signed them without any changes and returned them, thereby becoming a minority member of M61 with a 34% interest.

**Neither admitted nor denied for the reason that Defendant is without sufficient information to respond to this allegation and leaves Plaintiff to its proofs.**

53. On March 25, 2020 knowing the M61 documentation had been completed SLC informed Klaus that SLC also required a sublease of the building where the Equipment would be installed. Klaus complied and made the sublease arrangements, thereby setting the stage for the signing of the Equipment loan and related Duffy Guaranty. That same day Duffy wired $5,000 to M61 for the building lease payment.

**Neither admitted nor denied for the reason that Defendant is without sufficient information to respond to this allegation and leaves Plaintiff to its proofs.**

54. Martineau Firm and Klaus failed to inform and advise Duffy he should obtain independent counsel, and specifically failed to inform him there existed a real and active conflict of interest between him and Schunks, knowing that Duffy's credit and Guaranty were the

sole basis on which SLC would rely to finance the transaction with Enagon, that Duffy as a passive investor had no control over M61 and if the operations were unable to generate funds to pay the SLC loan and operating expenses he would be called upon to repay millions of indebtedness pursuant to his guaranty.

**Neither admitted nor denied for the reason that Defendant is without sufficient information to respond to this allegation and leaves Plaintiff to its proofs.**

55. As Klaus prepared the sublease documents to facilitate the Equipment loan, on or about March 25, 2020 SLC sent out the transaction documents for the M61 purchase of the three sonic mills for industrial hemp processing, the Equipment, from Enagon, the Equipment finance agreement and the Equipment Financing Guaranty of Duffy.

**Neither admitted nor denied for the reason that Defendant is without sufficient information to respond to this allegation and leaves Plaintiff to its proofs.**

56. Ebels and Schunks had actual knowledge the Equipment M61 purchased from Enagon for an unrestricted $2,000,000 payment on March 31, 2020 in fact did not then exist- its manufacture would take not less than four and as many as six months. They and each of them knew Duffy was unaware of this material fact. In short, Duffy was fraudulently induced to guarantee a loan for Equipment that did not exist, although the transaction documentation described it as if it did exist as the subject of the Equipment loan.

**Defendants deny each and every of the allegations because they are untrue. In further answer, the transaction documents and delivery schedule were entered into, and speak for themselves, in establishing the falsity of Plaintiff's allegations. In further answer, Defendants deny the allegations because they are untrue, for the**

**reasons set forth in the prior answers.  Defendants did not know Plaintiff and did not know what Plaintiff was aware of or unaware of.**

57. Duffy alleges that Ebels, Enagon and Schunks knew the Equipment was not worth the $4,000,000 invoiced by Enagon to M61 but did so to create the fictional MSRP in order to meet the 50% of MSRP SLC loan limit. Instead, Duffy alleges upon information and belief that the Equipment was not likely worth more than the $2,000,000 paid less the kickbacks Ebels paid to Schunks estimated at approximately $400,000, yet fraudulently described in transaction documentation as Equipment purchased at MSRP for $4,000,000 as the Collateral in the SLC loan documents.

**Defendants deny each and every of the allegations because they are untrue.  In further answer, the transaction documents and delivery schedule were entered into, and speak for themselves, in establishing the falsity of Plaintiff's allegations.  In further answer, Defendants deny the allegations because they are untrue, for the reasons set forth in the prior answers.  There were no MSRPs, Defendants did not know of SLC loan limits, never paid any kickbacks, and did not prepare any loan documents.**

58. On further information and belief Ebels of Enagon and Schunks were engaged in a secret partnership regarding the Equipment wherein Ebels and Enagon agreed to make payments on the SLC $106,000 per month loan payment until the Equipment was actually delivered. This Enagon reasoned would, once the Equipment was delivered and operational, demonstrate the bona fides of the sonic mill application and result in more such sonic mill sales for Enagon.

**Defendants deny each and every of the allegations because they are untrue.  In further answer, the transaction documents and delivery schedule were entered into, and speak for themselves, in establishing the falsity of Plaintiff's allegations.  In further answer, Defendants deny the allegations because they are untrue, for the reasons set forth in the prior answers.**

59. Instead of manufacturing the Equipment for timely delivery on or before March 31, Enagon used the funds to pay off other vendors and creditors, and Ebels bought himself a new BMW for more than $100,000, of which he took delivery months before the January delivery of the Equipment to M61.

**Defendants deny each and every of the allegations because they are untrue.  In further answer, the transaction documents and delivery schedule were entered into, and speak for themselves, in establishing the falsity of Plaintiff's allegations.  In further answer, Defendants deny the allegations because they are untrue, for the reasons set forth in the prior answers.**

60. Duffy, on information and belief, alleges that Martineau Firm and Klaus knew the Equipment did not exist on March 31, 2020 and they further knew Duffy did not know that truth.

**Neither admitted nor denied for the reason that Defendant is without sufficient information to respond to this allegation and leaves Plaintiff to its proofs.**

61. Alternatively, Martineau Firm and Klaus failed to assure the delivery of the Equipment before the $2,000,000 SLC payment to Enagon would be paid on behalf of M61, materially raising the risk of default because if M61 and Schunks had none

of the three sonic mills they would be unable to produce any income and a default on the SLC obligation would immediately result.

**Neither admitted nor denied for the reason that Defendant is without sufficient information to respond to this allegation and leaves Plaintiff to its proofs.**

62. Duffy's clear and unambiguous understanding and belief at all times during discussions from February 26, 2020 and afterward was that the Equipment (the three sonic mills) had an MSRP of $4,000,000, would be manufactured and ready for delivery to M61 before the $2,000,000 payment was made, as M61's use of the Equipment was the essential precedent condition to success. Notwithstanding Duffy's understanding and belief, Enagon, Ebels and Schunks knew the Equipment did not have a realistic MSRP of $4,000,000, did not then exist and that it would not be timely and contemporaneously delivered to M61.

**Defendants deny each and every of the allegations because they are untrue.  In further answer, the transaction documents and delivery schedule were entered into, and speak for themselves, in establishing the falsity of Plaintiff's allegations.  In further answer, Defendants deny the allegations because they are untrue, for the reasons set forth in the prior answers. There was a delivery schedule in the transaction documents. At the time of contract, none of the parties anticipated the government shut down of businesses due to COVID that would occur during and after this time period. Defendants deny having knowledge what Plaintiff was unaware of.**

63. Further, Duffy alleges on information and belief that Klaus also knew the Equipment did not exist at the time the $2,000,000 payment would be made by SLC to Enagon, but failed to so inform Duffy.

**Neither admitted nor denied for the reason that Defendant is without sufficient information to respond to this allegation and leaves Plaintiff to its proofs.**

64. The transaction documentation for M61, for which Duffy provided his guaranty, placed the Equipment at M61's Michigan address, thus indicating that the Equipment had been or was promptly to be delivered as the documentation provided before or contemporaneously the $2,000,000 payment. Duffy at that time believed the Equipment would be promptly delivered upon payment and that M61 was preparing to begin processing hemp biomass.

**Neither admitted nor denied for the reason that Defendant is without sufficient information to respond to this allegation and leaves Plaintiff to its proofs.**

65. Ebels, Enagon, Schunks and M61 intended by this gambit to provide funding to manufacture the Equipment in order to fund a broader anticipated venture between at the least Ebels and Schunks in hemp biomass production which would be funded through Duffy's Guaranty, who they all assumed would make payments until the Equipment was actually delivered and operational, but concealed that intention from Duffy.

**Defendants deny each and every of the allegations because they are untrue.  In further answer, the transaction documents and delivery schedule were entered into, and speak for themselves, in establishing the falsity of Plaintiff's allegations.  In further answer, Defendants deny the allegations because they are untrue, for the**

25

**reasons set forth in the prior answers.  Defendants did not know about Plaintiff's alleged Guaranty.**

66. In September 2020, Duffy was served with the summons and complaint in that certain action styled *SLC1, LLC vs. M-61 Processing, LLC, Michael Schunk, James Duffy, Amerihemp Michigan, LLC, And Schunk's Rock Farm, LLC*, as Case No. 2020CV033087, filed on September 8, 2020 in the District Court of Colorado, City and County of Denver (the "Colorado Action").

**Neither admitted nor denied for the reason that Defendant is without sufficient information to respond to this allegation and leaves Plaintiff to its proofs.**

67. The Colorado Action involving Duffy was set for trial in January 2022, meanwhile all the other defendants were promptly defaulted and owe in excess of $2,200,000.

**Neither admitted nor denied for the reason that Defendant is without sufficient information to respond to this allegation and leaves Plaintiff to its proofs.**

68. After the Colorado Action was filed, Martineau Firm and Klaus were informed of the complaint and undertook to represent all of the defendants, again without obtaining and or discussing a conflict waiver and without an engagement letter, and negotiated with counsel for SLC in Colorado to work out deferral of the payment default, with payment terms of $50,000 per month for three months commencing September 28, 2020.

**Neither admitted nor denied for the reason that Defendant is without sufficient information to respond to this allegation and leaves Plaintiff to its proofs.**

69. At that same time Klaus wrote Enagon and Ebels and communicated with their lawyer when he confirmed that, notwithstanding the SLC payment of $2,000,000 on March 31, 2020, none of the Equipment had been delivered as of the September 8, 2020 filing of the

complaint. Klaus then wrote Enagon and Ebels that prompt delivery of the Equipment was required, but Enagon and Ebels disputed that delivery was even due before October 23, 2020, that Mike had signed a purchase agreement which allowed Enagon six months to manufacture the Equipment. Thus, during those written exchanges and related negotiations Klaus learned that the Equipment was not even scheduled to be delivered until October 23, 2020.

**Admitted that Mike had signed a purchase agreement which allowed Enagon at least six months to manufacture the Equipment. Admitted that the written delivery schedule did not provide for delivery prior to October 23, 2020, and that the pandemic and national emergency delayed delivery. The remaining allegations are neither admitted nor denied for the reason that Defendant is without sufficient information to respond to this allegation and leaves Plaintiff to its proofs.**

70. Martineau Firm and Klaus took no action to cancel the Equipment purchase, nor to hold up delivery of the Equipment to protect the value, but instead just recommended to Duffy that he make the three $50,000 payments. Duffy agreed only to make the first two payments of $50,000 which he did so by wire transfer on September 30, 2020 and October 26, 2020.

**Admitted that no action was taken to cancel the Equipment purchase, and that M61 accepted the Equipment and delivery dates. The remaining allegations are neither admitted nor denied for the reason that Defendant is without sufficient information to respond to this allegation and leaves Plaintiff to its proofs.**

71. In fact Martineau Firm and Klaus, despite knowing that Duffy's second $50,000 payment was due October 26, three days after the October 23, 2020 Equipment Enagon disclosed

delivery date, took no action to advise Duffy not to make the second payment when Enagon failed to deliver the Equipment.

**Neither admitted nor denied for the reason that Defendant is without sufficient information to respond to this allegation and leaves Plaintiff to its proofs.**

72. During the September 2020 phone calls with Schunks and Klaus, Duffy learned for the first time that the Equipment had never been delivered. He and Klaus were also informed at that time by Mike Schunk that Enagon was to make the payments on the loan until the Equipment was delivered but reneged. Klaus did not recommend that Duffy immediately secure independent legal counsel, but instead encouraged and recommended that Duffy make all of the $50,000 payments as to which he agreed only to make two of the three stipulated payments.

**Neither admitted nor denied for the reason that Defendant is without sufficient information to respond to this allegation and leaves Plaintiff to its proofs. Defendants deny that Defendant Enagon was to make loan payments on the loan until the equipment was delivered, and deny that they reneged on any alleged agreement. In further answer, if Plaintiff attended any meetings with Defendants, he did not identify why he was there and did not participate in the meeting. Defendants had no knowledge of who Plaintiff was.**

73. Additionally, in September 2020, Michael and Lee Schunk for the first time gave Duffy a copy of a June 26, 2020 email from Harris addressed to Ebels of Enagon and Mike Schunk stating:

When we wired the money to Enagon we were told an existing mill was to be deployed to M61 so Mike could get up and running and start making

money. We never pre-fund manufacturers until the equipment is ready to

be shipped. We need to schedule a site inspection as I have informed

everyone many times.

I was told when I was at Enagon that the mill I saw the demonstration on was

going to be delivered and deployed on a temporary basis until the final mill was

deployed to (sic) Enagon and that would happen in 4 months. This has not

happened. This is a real issue that needs to be resolved immediately.

We can not (sic) have accounts go 30 days past due because they get

passed to our asset manager and our in house legal department.

This is about to be out of my hands and when it goes to my legal

department then we are in a place we do not want to be.

**The allegations pertaining to Defendants are denied for the reason that the
transaction documents with delivery schedule that were signed are contrary to the
alleged emails.  The remaining allegations are neither admitted nor denied for the
reason that Defendant is without sufficient information to respond to this allegation
and leaves Plaintiff to its proofs.**

74. Upon reading the June 26, 2020 email, Duffy confronted Schunks and Klaus,

telling them that Enagon, Ebels and Schunks at the outset knew they were paying

$2,000,000 for equipment that did not exist. Despite this, Martineau Firm and Klaus took

no action to protect Duffy.

**Neither admitted nor denied for the reason that Defendant is without sufficient information to respond to this allegation and leaves Plaintiff to its proofs.**

75. When it came time for the third of the three payments on November 26, 2020, this one by Schunks, they defaulted and Enagon once again refused to make the payment. Moreover, at that time Enagon still had not delivered the Equipment to M61 which recall was promised as of the latest October 23, 2020.

**Neither admitted nor denied for the reason that Defendant is without sufficient information to respond to this allegation and leaves Plaintiff to its proofs. In further answer, Defendants deny that they had an obligation to make any payments.**

76. Ultimately, M-61 Processing, LLC, Michael Schunk, Amerihemp Michigan, LLC, and Schunk's Rock Farm, LLC, defendants in the Colorado Action, failed to answer and effective December 2020 SLC took default judgments against each of them for more than $2,000,000 each, domesticated the judgments in Michigan and levied on all of those defendants' assets, including the Equipment.

**Neither admitted nor denied for the reason that Defendant is without sufficient information to respond to this allegation and leaves Plaintiff to its proofs.**

77. Importantly, as of December 14, 2020 none of the Equipment had yet been delivered by Enagon to M61. Upon information and belief the Equipment was not delivered until January 2021 when delivered to M61 and the Schunks against whom SLC already had a $2,200,000 judgment. The Equipment was therefore delivered approximately ten months after the March 31, 2020 payment of $2,000,000 to Enagon.

**Defendants deny each and every of the allegations because they are untrue.  In further answer, the transaction documents and delivery schedule were entered into,**

30

**and speak for themselves, in establishing the falsity of Plaintiff's allegations In further answer, Defendants deny the allegations because they are untrue, for the reasons set forth in the prior answers. The alleged delivery dates are incorrect. In further answer, if Plaintiff attended any meetings with Defendants, he did not identify why he was there and did not participate in the meeting. Defendants had no knowledge of who Plaintiff was.**

78. The Equipment was repossessed by SLC in July 2021 six months after its delivery to M61. The Equipment sustained serious damage in the hands of the Schunks and sold for $400,000. Recall that the alleged Equipment MSRP was $4,000,000 when completed. Upon information and belief the Equipment had a true MSRP of not more than $400,000 per sonic mill or $1,200,000 total not $4,000,000 and not even the $2,000,000 paid. **The allegations pertaining to the Equipment sustaining serious damage in the hands of the Shunks is admitted. Except for this, Defendants deny each and every of the allegations because they are untrue. In further answer, the transaction documents and delivery schedule were entered into, and speak for themselves, in establishing the falsity of Plaintiff's allegations In further answer, Defendants deny the allegations because they are untrue, for the reasons set forth in the prior answers. Defendants deny the allegations pertaining to alleged "MSRP" because they are false and frivolous, for the reasons set forth in the prior answers. In further answer, if Plaintiff attended any meetings with Defendants, he did not identify why he was there and did not participate in the meeting. Defendants had no knowledge of who Plaintiff was.**

79. Duffy answered, cross claimed and counter claimed in the Colorado Action against M61 and Michael both of whom failed to answer and against whom Duffy has a default.

**Neither admitted nor denied for the reason that Defendant is without sufficient information to respond to this allegation and leaves Plaintiff to its proofs.**

80. As above alleged, Duffy executed and delivered his personal guaranty of the SLC to M61 Equipment Financing transaction on his understanding and belief that the Equipment would be delivered to M61 upon SLC's $2,000,000 payment to Enagon, thus permitting M61 to get it operational and begin to generate the revenue required pay SLC, repay the loans from Duffy and create a reserve for the $2,000,000 purportedly due to Enagon.

**Neither admitted nor denied for the reason that Defendant is without sufficient information to respond to this allegation and leaves Plaintiff to its proofs.  In further answer, upon information and belief, Plaintiff failed to get M61 operational, failed to cause revenue to be generated required to pay SLC, failed to cause revenue to be generated to repay any alleged loans to Plaintiff, and failed to create any reserve to pay Defendants. In further answer, if Plaintiff attended any meetings with Defendants, he did not identify why he was there and did not participate in the meeting. Defendants had no knowledge of who Plaintiff was.**

81. Enagon had no ability and no intention to deliver the Equipment to M61 upon receipt of the $2,000,000 on March 31, 2020, as and when promised.

**Denied for the reason that the contract documents and written delivery schedule stated a specific time frame that was subsequent to March 31, 2020.  In further answer, the documents speak for themselves.  In further answer, if Plaintiff attended any meetings with Defendants, he did not identify why he was there and**

32

**did not participate in the meeting. Defendants had no knowledge of who Plaintiff**

**was.**

82. Enagon, falsely or negligently, misrepresented to Duffy among other things
described above the MSRP and that it would deliver the Equipment to M61
promptly upon receipt of SLC's payment to Enagon.

    **Denied for the reason that the contract documents and written delivery schedule**
    **stated a specific time frame that was subsequent to March 31, 2020.  In further**
    **answer, Defendants deny any reference was made to MSRP.  The documents speak**
    **for themselves. In further answer, if Plaintiff attended any meetings with**
    **Defendants, he did not identify why he was there and did not participate in the**
    **meeting. Defendants had no knowledge of who Plaintiff was.**

83. Enagon and Ebels knew of the falsity of such Duffy representations.

    **Denied for the reason that the contract documents and written delivery schedule**
    **stated a specific time frame that was subsequent to March 31, 2020.  In further**
    **answer, Defendants deny any reference was made to MSRP.  The documents speak**
    **for themselves.  In further answer, if Plaintiff attended any meetings with**
    **Defendants, he did not identify why he was there and did not participate in the**
    **meeting. Defendants had no knowledge of who Plaintiff was.**

84. Duffy reasonably relied to his detriment upon the foregoing representations.

    **Denied for the reason that the contract documents and written delivery schedule**
    **stated a specific time frame that was subsequent to March 31, 2020.  In further**
    **answer, Defendants deny any reference was made to MSRP.  The documents speak**

**for themselves.  Any alleged reliance by Plaintiff on Plaintiff's false allegations is unreasonable. In further answer, if Plaintiff attended any meetings with Defendants, he did not identify why he was there and did not participate in the meeting. Defendants had no knowledge of who Plaintiff was.**

85. Enagon knew or should reasonably have known it was critically important to Duffy that the Equipment be at a realistic MSRP and that Enagon's delivery of the Equipment to M61 would occur contemporaneously with SCL's payment and its failure to inform Duffy of the truth of the MSRP and that contemporaneous delivery would not occur, was an intentional misrepresentation and omission of material facts.

**Denied for the reason that the contract documents and written delivery schedule stated a specific time frame that was subsequent to March 31, 2020.  In further answer, Defendants deny any reference was made to MSRP.  The documents speak for themselves.  In further answer, Defendants did not know who Plaintiff was and had no knowledge of what was important to Plaintiff. In further answer, if Plaintiff attended any meetings with Defendants, he did not identify why he was there and did not participate in the meeting.**

86. Duffy reasonably believed, when his personal guaranty was solicited as above alleged, that the Equipment was on site or would be on site at M61 with SLC's $2,000,000 payment to Enagon for the Equipment with an MSRP of $4,000,000.

**Denied for the reason that the contract documents and written delivery schedule stated a specific time frame that was subsequent to March 31, 2020.  In further answer, Defendants deny any reference was made to MSRP.  The documents speak for themselves.  In further answer, Defendants did not know who Plaintiff was, did**

34

**not know whether any personal guaranty was ever solicited or given by Plaintiff, and had no knowledge of what Plaintiff believed.  In further answer, if Plaintiff attended any meetings with Defendants, he did not identify why he was there and did not participate in the meeting.  Any alleged belief was unreasonable under the circumstances.**

87. On such reliance, Duffy became an M61 member, provided loan funding as above alleged, and delivered his Equipment Loan guaranty for performance of the SLC Equipment Financing Agreement.

     **Denied for the reason that the contract documents and written delivery schedule stated a specific time frame that was subsequent to March 31, 2020.  In further answer, Defendants deny any reference was made to MSRP.  The documents speak for themselves.  In further answer, Defendants did not know who Plaintiff was, did not know whether any personal guaranty was ever solicited or given by Plaintiff, and had no knowledge of what Plaintiff believed.  In further answer, if Plaintiff attended any meetings with Defendants, he did not identify why he was there and did not participate in the meeting. Any alleged reliance by Plaintiff was unreasonable under the circumstances.**

88. Duffy subsequently learned the Equipment was not delivered to M61 until some in January 2021 at the earliest.

     **Defendants deny the allegations because what Plaintiff allegedly learned was false.**

89. Duffy has also learned that SLC seized the Equipment from M61 in July and now due to the misrepresentation of the MSRP and extensive damage it sold for $400,000.

**Denied for the reason that the contract documents and written delivery schedule stated a specific time frame that was subsequent to March 31, 2020.  In further answer, Defendants deny any reference was made to MSRP.  The documents speak for themselves.  The extensive damage was not caused by Defendants, but by M61 and its agents and representatives. In further answer, if Plaintiff attended any meetings with Defendants, he did not identify why he was there and did not participate in the meeting. Defendants had no knowledge of who Plaintiff was.**

90. Duffy also learned that SLC executed on the Amerihemp inventory and equipment the accounting and disposition of which is unknown. Duffy loaned $709,250 to Amerihemp and Schunk Rock Farm LLC which now appears to be a total loss.

**Neither admitted nor denied for the reason that Defendant is without sufficient information to respond to this allegation and leaves Plaintiff to its proofs.**

91. Duffy as a result of his guaranty of the M61 loan Guaranty, after extensive litigation settled his obligation on the Guaranty with SLC for $1,250,000.

**Neither admitted nor denied for the reason that Defendant is without sufficient information to respond to this allegation and leaves Plaintiff to its proofs.  In further answer, Defendants allege that any settlement by Plaintiff constitutes a failure of Plaintiff to mitigate damages.**

92. As a result of the foregoing, Duffy has suffered loss, injury, and damage according to proof at trial.

**Denied for the reason that any loss by Plaintiff is due entirely Plaintiff's failure to exercise reasonable care and diligence, or the acts or omissions of other parties. In further answer, if Plaintiff attended any meetings with Defendants, he did not**

identify why he was there and did not participate in the meeting. **Defendants had no knowledge of who Plaintiff was.**

## COUNT I
## ALLEGED VIOLATION OF WASHINGTON STATE SECURITIES ACT

93. Plaintiff re-alleges and incorporates the foregoing paragraphs as if fully set forth herein. **Defendants reallege the foregoing paragraphs.**

94. Defendants Enagon, Ebels, Martineau Firm and Klaus were sellers of securities to Duffy under the Washington State Securities Act (WSSA) because they substantially contributed to the sale to Duffy of the M61 membership interests, which included the obligation to provide loans and to guarantee to SLC the $2,000,000 loan financing of M61 for the three sonic mills hemp biomass processing Equipment.

**Denied for the reason that Defendants did not contribute to the sale of M61 membership interests to Duffy. Duffy made his own individual, calculated decision to join and finance M61. In further answer, if Plaintiff attended any meetings with Defendants, he did not identify why he was there and did not participate in the meeting. Defendants had no knowledge of who Plaintiff was.**

95. Enagon, Ebels, Martineau Firm and Klaus were among the members of the Control Group identified herein.

**Defendants deny the allegations because they are untrue.**

96. Enagon and Ebels made material misrepresentations in the sale of securities by representing to Duffy that the Equipment was viable for M61's contemplated use, had an MSRP of $4,000,000 and they would deliver the Equipment to M61 on or before, or

contemporaneously with the $2,000,000 payment by SLC, in violation of Revised Code of Washington, RCW § 21.20.010.

**Defendants deny the allegations because they are untrue. In further answer, the transaction documents and delivery schedule were entered into, and speak for themselves, in establishing the falsity of Plaintiff's allegations. In further answer, if Plaintiff attended any meetings with Defendants, he did not identify why he was there and did not participate in the meeting. Defendants had no knowledge of who Plaintiff was.**

97. Martineau Firm and Klaus made material misrepresentations in the sale of securities by representing to Duffy they would form M61 for the members in an appropriate legal structure such that Duffy's loans of $250,000 and his guaranty of the SLC Equipment loan obligation of M61 would be structured such that, at minimum, Enagon would deliver economically viable processing Equipment to M61 with an MSRP of $4,000,000 before the $2,000,000 payment by SLC, in violation of Revised Code of Washington (RCW),§ 21.20.010.

**Defendants are without sufficient information to respond to this allegation and leave Plaintiff to its proofs.**

98. Enagon, Ebels, Martineau Firm and Klaus further violated Washington RCW 21.20.010 by omitting material facts in the sale of securities, including as described at paragraphs 99 through 111 inclusive.

**Defendants deny the allegations because they are untrue. In further answer, the transaction documents and delivery schedule were entered into, and speak for themselves, in establishing the falsity of Plaintiff's allegations. In further answer, if**

38

**Plaintiff attended any meetings with Defendants, he did not identify why he was there and did not participate in the meeting. Defendants had no knowledge of who Plaintiff was.**

99. Enagon, organized only on May 1, 2013 had never successfully developed or constructed, or manufactured machinery of the nature and quality of the contemplated Equipment.

**Defendants deny the allegations because they are untrue. In further answer, the transaction documents and delivery schedule were entered into, and speak for themselves, in establishing the falsity of Plaintiff's allegations.   In further answer, if Plaintiff attended any meetings with Defendants, he did not identify why he was there and did not participate in the meeting. Defendants had no knowledge of who Plaintiff was.**

100.      Enagon had sales of under $2,000,000 per year in its limited history and only 5-7 employees with limited credit available to it, believed to be trade credit of not more than $100,000 from any one vendor.

**Defendants deny the allegations because they are untrue. In further answer, the transaction documents and delivery schedule were entered into, and speak for themselves, in establishing the falsity of Plaintiff's allegations.   In further answer, if Plaintiff attended any meetings with Defendants, he did not identify why he was there and did not participate in the meeting. Defendants had no knowledge of who Plaintiff was.**

101.      The February 26, 2020 presentation meeting at Enagon touted non-existent unproven Equipment that had not been commercially vetted and would produce output that had unproven saleably.

**Defendants deny the allegations because they are untrue. In further answer, the transaction documents and delivery schedule were entered into, and speak for themselves, in establishing the falsity of Plaintiff's allegations.   In further answer, if Plaintiff attended any meetings with Defendants, he did not identify why he was there and did not participate in the meeting. Defendants had no knowledge of who Plaintiff was.**

102.     The $4,000,000 MSRP and contract between Enagon and M61 was fraudulently contrived in order to circumvent the SLC limitation of 50% of Manufacturers Suggested Retail Price in order to obtain the $2,000,000 loan.

**Defendants deny the allegations because they are untrue. In further answer, the transaction documents and delivery schedule were entered into, and speak for themselves, in establishing the falsity of Plaintiff's allegations.   In further answer, if Plaintiff attended any meetings with Defendants, he did not identify why he was there and did not participate in the meeting. Defendants had no knowledge of who Plaintiff was.**

103.     Enagon would not deliver the Equipment to M61 contemporaneously with receipt of the $2,000,000 payment from SLC.

**Admits. The equipment was not due to be delivered until six months after the March purchase order. In further answer, the transaction documents and delivery schedule were entered into, and speak for themselves, in establishing the falsity of Plaintiff's allegations.   In further answer, if Plaintiff attended any meetings with**

**Defendants, he did not identify why he was there and did not participate in the meeting. Defendants had no knowledge of who Plaintiff was.**

104.     Notwithstanding its limited history, lack of experience and limited trade credit Enagon would not be required to escrow the $2,000,000 SLC payment funds for purposes of developing and manufacturing the then non-existent Equipment but would take the money into its general account without restriction.

**Defendants deny the allegations because they are untrue. In further answer, the transaction documents and delivery schedule were entered into, and speak for themselves, in establishing the falsity of Plaintiff's allegations.   In further answer, if Plaintiff attended any meetings with Defendants, he did not identify why he was there and did not participate in the meeting. Defendants had no knowledge of who Plaintiff was.  There was no requirement to escrow based on the agreement between the companies.**

105.     Mike Schunk authorized the payment by SLC of $2,000,000 to Enagon without confirming shipment and delivery of the Equipment to M61 and without escrowing the funds because he had a secret partnership and kickback arrangement with Enagon and Ebels.

**Defendants deny the allegations because they are untrue. In further answer, the transaction documents and delivery schedule were entered into, and speak for themselves, in establishing the falsity of Plaintiff's allegations.   In further answer, if Plaintiff attended any meetings with Defendants, he did not identify why he was there and did not participate in the meeting. Defendants had no knowledge of who Plaintiff was.**

106.    Enagon would not deliver the Equipment until the earliest October 23, 2020 more

than six months after receiving the $2,000,000 whereas M61 had no assets and no

operations and as such would have to rely upon Duffy to fund the $106,000 plus

payments per month- this of course could not be disclosed to Duffy because he would

refuse to make such an investment, sign the Guaranty and make the loans.

**Admits in part and denies in part. Admits that the equipment was not due to be**

**delivered until approximately six months after the purchase. Denies knowledge of**

**M61's funding plan during this time period or the lack of disclosure between M61**

**members. In further answer, the transaction documents and delivery schedule were**

**entered into, and speak for themselves, in establishing the falsity of Plaintiff's**

**allegations.  In further answer, if Plaintiff attended any meetings with Defendants,**

**he did not identify why he was there and did not participate in the meeting.**

**Defendants had no knowledge of who Plaintiff was.**

107.    Enagon and Ebels, notwithstanding Ebels' favorably expressed opinions

regarding the Equipment and its utility to M61's business plan, did not believe those

statements were true and instead it/he/they made them solely to secure Duffy's

commitment to acquire the 34% M61membership interest investment, to provide loans

and to guaranty the non-existent Equipment SLC loan so that Ebels and Enagon could

obtain the $2,000,000 from SLC.

**Defendants deny the allegations because they are untrue. In further answer, the**

**transaction documents and delivery schedule were entered into, and speak for**

**themselves, in establishing the falsity of Plaintiff's allegations.  In further answer, if**

**Plaintiff attended any meetings with Defendants, he did not identify why he was**

**there and did not participate in the meeting. Defendants had no knowledge of who**

**Plaintiff was.**

108.     The failure to deliver the Equipment with SLC's $2,000,000 payment to Enagon

would cause the loan to default, would trigger demand on Duffy's guaranty, and would

cause Duffy to lose the anticipated financial benefit of his 34% membership interest in

M61, his loans, and his participation in the hemp processing business M61 planned and

intended..

**Defendants deny the allegations because they are untrue. In further answer, the**

**transaction documents and delivery schedule were entered into, and speak for**

**themselves, in establishing the falsity of Plaintiff's allegations.   In further answer, if**

**Plaintiff attended any meetings with Defendants, he did not identify why he was**

**there and did not participate in the meeting. Defendants had no knowledge of who**

**Plaintiff was.**

109.     The M61 operating agreement did not protect Duffy who was an absent passive

purchaser of securities from Washington from the Ebels-Enagon and Schunks' lack of

sufficient business expertise and dishonest conduct thereby jeopardizing his loans as

well as his membership interests and exposed him to liability on the guaranty.

**Defendants deny the allegations because they are untrue. In further answer, the**

**transaction documents and delivery schedule were entered into, and speak for**

**themselves, in establishing the falsity of Plaintiff's allegations.   In further answer, if**

**Plaintiff attended any meetings with Defendants, he did not identify why he was**

**there and did not participate in the meeting. Defendants had no knowledge of who**

**Plaintiff was.  The allegations pertaining to the operating agreement are neither**

**admitted nor denied for reason that Defendants are without sufficient information to respond to this allegation and leaves Plaintiff to its proofs.**

110.    No disclosures were made that Schunks had a bad business reputation and no credible experience in operations as were anticipated to be required, nor were they considered trustworthy.

**Neither admitted nor denied, and Plaintiff is left to his proofs.  In further answer, the transaction documents and delivery schedule were entered into, and speak for themselves, in establishing the falsity of Plaintiff's allegations.   In further answer, Defendants state they did not know who Plaintiff was and therefore had no obligation to make any disclosures to him.  In further answer, Defendants did not learn such information until apparently after Plaintiff entered into transaction documents with M61.**

111.    Ebels and Mike Schunk's knowingly false representation that the Equipment existed with an MSRP of $4,000,000 and its use as Collateral when in fact both knew that the same was false and a cover up to get SLC to fund the $2,000,000.

**Defendants deny the allegations because they are untrue. In further answer, the transaction documents and delivery schedule were entered into, and speak for themselves, in establishing the falsity of Plaintiff's allegations.   In further answer, if Plaintiff attended any meetings with Defendants, he did not identify why he was there and did not participate in the meeting. Defendants had no knowledge of who Plaintiff was. Defendants made no representations about an alleged MSRP.  In further answer, Defendants did not know and had no reason to know that Plaintiff would make any investment, provide loans, or personally guaranty any obligation.**

112.    Duffy reasonably relied on these material misrepresentations and omissions when he signed the M61 operating agreement and committed to the M61 34% membership interest purchase, the loans and the signing of the guaranty all of which were consummated in Washington.

**Defendants deny the allegations because they are untrue. In further answer, the transaction documents and delivery schedule were entered into, and speak for themselves, in establishing the falsity of Plaintiff's allegations.   In further answer, if Plaintiff attended any meetings with Defendants, he did not identify why he was there and did not participate in the meeting. Defendants had no knowledge of who Plaintiff was. In further answer, Defendants did not know and had no reason to know that Plaintiff would make any investment, provide loans, or personally guaranty any obligation.  Any alleged reliance by Plaintiff was unreasonable.**

113.    Duffy signed transaction documents, including the M61 operating agreement sent to his residence in Washington, provided the loans and the guaranty, because he believed M61 would profitably operate its proposed hemp processing business with a resulting financially viable and stable investment which would be more than able, based upon discussions by Ebels and Mike at the February 26, 2020 meeting to meet the Equipment loan obligation, the final $2,000,000 obligation to Enagon, and would provide long-term growth of earnings and profits from the intended business opportunity.

**Defendants deny the allegations because they are untrue. In further answer, the transaction documents and delivery schedule were entered into, and speak for themselves, in establishing the falsity of Plaintiff's allegations.   In further answer, if Plaintiff attended any meetings with Defendants, he did not identify why he was**

**there and did not participate in the meeting. Defendants had no knowledge of who Plaintiff was. In further answer, Defendants did not know and had no reason to know that Plaintiff would make any investment, provide loans, or personally guaranty any obligation.**

114.      Duffy reasonably relied on Enagon, Ebels, Martineau Firm and Klaus' false representations and invested in M61 acquiring the 34% membership interest, providing loans and personally guaranteed the SLC obligation.

**Defendants deny the allegations because they are untrue. In further answer, the transaction documents and delivery schedule were entered into, and speak for themselves, in establishing the falsity of Plaintiff's allegations.   In further answer, if Plaintiff attended any meetings with Defendants, he did not identify why he was there and did not participate in the meeting. Defendants had no knowledge of who Plaintiff was. In further answer, Defendants did not know and had no reason to know that Plaintiff would make any investment, provide loans, or personally guaranty any obligation.**

115.      In addition to the primary violations set forth above, Enagon, Ebels, Martineau Firm and Klaus falsely represented themselves as persons with substantial industry experience, and expressed opinions and made representations not reasonably based on fact, and therefore each and all of said defendants violated Washington RCW 21.20.010. Therefore, defendants' primary violation of the statute also serves as basis for secondary liability as set forth below.

**Defendants deny the allegations because they are untrue. In further answer, the transaction documents and delivery schedule were entered into, and speak for**

**themselves, in establishing the falsity of Plaintiff's allegations.   In further answer, if Plaintiff attended any meetings with Defendants, he did not identify why he was there and did not participate in the meeting. Defendants had no knowledge of who Plaintiff was.**

116.      Plaintiff is entitled to damages in an amount to be proven at trial, plus prejudgment interest of eight percent per annum, costs, and attorneys' fees, pursuant to Washington RCW 21.20.430(1).

**Defendants deny each and every of the allegations pertaining to Defendants because they are untrue and Plaintiff is not entitled to any damages for the reasons set forth above.  To the extent that this allegation attempts to state a conclusion of law, no answer is required.**

## COUNT II

## ALLEGED VIOLATION OF WSSA

117.      Plaintiff re-alleges and incorporates the foregoing paragraphs as if fully set forth herein.

**Defendants reallege the foregoing paragraphs.**

118.      Enagon, Ebels, Martineau Firm and Klaus were at all times relevant officers, directors, agents, and/or control persons regarding the $2,000,000 payment from SLC to Enagon, which was for the direct benefit of M61 and for the benefit of Duffy as its 34% membership interest purchaser and M61's guarantor, and said defendants were thereby subject to the requirement of RCW 21.20.430(3) to timely deliver or see to the delivery of

the Equipment to M61 with a legitimate MSRP of $4,000,000 in coordination with SLC's $2,000,000 payment to Enagon.

**Defendants deny the allegations because they are untrue. In further answer, the transaction documents and delivery schedule were entered into, and speak for themselves, in establishing the falsity of Plaintiff's allegations. In further answer, if Plaintiff attended any meetings with Defendants, he did not identify why he was there and did not participate in the meeting. Defendants had no knowledge of who Plaintiff was. In further answer, Defendants had no control over SLC.**

119.     Said defendants were at all times relevant also officers, directors, agents and/or control persons concerning SLC's purported $2,000,000 payment to Enagon for the direct benefit of Duffy pursuant to RCW 21.20.430 (3), because they had authority to control the receipt of the $2,000,000 payment and in particular to assure delivery of the Equipment before or concurrent with payment to Enagon.

**Defendants deny the allegations because they are untrue. In further answer, the transaction documents and delivery schedule were entered into, and speak for themselves, in establishing the falsity of Plaintiff's allegations. In further answer, if Plaintiff attended any meetings with Defendants, he did not identify why he was there and did not participate in the meeting. Defendants had no knowledge of who Plaintiff was. In further answer, Defendants had no control over SLC.**

120.     By reason of such status Enagon, Ebels, Martineau Firm and Klaus are jointly and severally liable for primary violation of RCW §21.20.430(1) and (3) by M61 and Schunks as set forth above.

**Defendants deny the allegations because they are untrue. In further answer, the transaction documents and delivery schedule were entered into, and speak for themselves, in establishing the falsity of Plaintiff's allegations.   In further answer, if Plaintiff attended any meetings with Defendants, he did not identify why he was there and did not participate in the meeting. Defendants had no knowledge of who Plaintiff was.**

**COUNT III**

**ALLEGED VIOLATION OF SECTION 10(b) OF SECURITIES ACT OF 1934**

121.     Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

**Defendants reallege the foregoing paragraphs.**

122.     In violation of Section 10(b) and Rule 10b-5, Defendants Enagon and Ebels falsely represented to Duffy, regarding his M61 membership interest investment, which required Duffy's personal guaranty of the Equipment purchase obligation, that Enagon would sell the processing Equipment with a legitimate $4,000,000 MSRP to M61 for an initial payment of $2,000,000 borrowed from SLC and a deferred $2,000,000 three year note due to Enagon, would deliver the Equipment to M61's premises upon the SLC payment of $2,000,000.

**Defendants deny the allegations because they are untrue. In further answer, the transaction documents and delivery schedule were entered into, and speak for themselves, in establishing the falsity of Plaintiff's allegations.   In further answer, if Plaintiff attended any meetings with Defendants, he did not identify why he was**

**there and did not participate in the meeting. Defendants had no knowledge of who Plaintiff was. In further answer, Defendants did not know who Plaintiff was, did not know what Plaintiff was considering, and made no representations to Plaintiff.**

123.　　　In violation of Section 10(b) and Rule 10b-5, Defendants Martineau Firm and Klaus falsely represented to Duffy regarding his M61 membership interest investment, which required Duffy's loans and personal guaranty of the SLC Equipment Finance agreement, that Schunks' majority control of M61 was reasonably based knowing that SLC would not fund the $2,000,000 otherwise and with knowledge that Schunks had a bad business reputation, were untrustworthy and without any credible financial or operating experience.

**Neither admitted nor denied for the reason that Defendant is without sufficient information to respond to this allegation and leaves Plaintiff to its proofs.**

124.　　　Further, Martineau Firm and Klaus failed to investigate Enagon and Ebels given the relative small size of the company, the $4,000,000 MSRP and to disclose the same to Duffy.

**Neither admitted nor denied for the reason that Defendant is without sufficient information to respond to this allegation and leaves Plaintiff to its proofs.  In further answer, Defendants deny there was a "MSRP."**

125.　　　Said defendants further violated Section 10(b) and Rule 10b-5 by omitting material facts in the sale of said securities, including without limitation as described above and at paragraphs 98 through 111 inclusive.

**Defendants deny the allegations because they are untrue. In further answer, the transaction documents and delivery schedule were entered into, and speak for**

50

**themselves, in establishing the falsity of Plaintiff's allegations.   In further answer, if Plaintiff attended any meetings with Defendants, he did not identify why he was there and did not participate in the meeting. Defendants had no knowledge of who Plaintiff was.**

126.     The misrepresentations and omissions of these defendants were made in their respective roles as persons who ostensibly possessed substantial industry experience and expertise, as well as knowledge of Enagon's relatively small size and lack of substance, and the Schunks' business practices and reputation, and lack of credible financial and operating experience, whose opinions were as a matter of law required to be reasonably based in fact.

**Defendants deny the allegations because they are untrue. In further answer, the transaction documents and delivery schedule were entered into, and speak for themselves, in establishing the falsity of Plaintiff's allegations.   In further answer, if Plaintiff attended any meetings with Defendants, he did not identify why he was there and did not participate in the meeting. Defendants had no knowledge of who Plaintiff was.**

127.     There was no such basis for defendants' opinions. As such, each and all such opinions violated § 10(a) of the Exchange Act and Rule 10b-5.

**Defendants deny the allegations because they are untrue. In further answer, the transaction documents and delivery schedule were entered into, and speak for themselves, in establishing the falsity of Plaintiff's allegations.   In further answer, if Plaintiff attended any meetings with Defendants, he did not identify why he was there and did not participate in the meeting. Defendants had no knowledge of who**

**Plaintiff was. In further answer, Plaintiff fails to allege with required specificity what "opinions" Defendants allegedly held.**

128.     Further, defendants' primary violation may serve as the basis for secondary liability as set forth below.

**Defendants deny the allegations because they are untrue. In further answer, the transaction documents and delivery schedule were entered into, and speak for themselves, in establishing the falsity of Plaintiff's allegations.   In further answer, if Plaintiff attended any meetings with Defendants, he did not identify why he was there and did not participate in the meeting. Defendants had no knowledge of who Plaintiff was. In further answer, Plaintiff fails to allege with required specificity what "opinions" Defendants allegedly held.**

129.     Defendants Enagon, Ebels, Martineau Firm and Klaus knew such representations and omissions described above were false and misleading when they were made, or they acted with reckless disregard of the truth regarding such matters.

**Defendants deny the allegations because they are untrue. In further answer, the transaction documents and delivery schedule were entered into, and speak for themselves, in establishing the falsity of Plaintiff's allegations.   In further answer, if Plaintiff attended any meetings with Defendants, he did not identify why he was there and did not participate in the meeting. Defendants had no knowledge of who Plaintiff was. In further answer, Plaintiff fails to allege with required specificity what "representations or omissions" Defendants allegedly made.**

130.     Said defendants' scienter is evidenced by Enagon and Ebel's joining with Mike Schunk in falsifying the representation that the Equipment had a legitimate MSRP of

$4,000,000 and that the Equipment was or would be manufactured and subject to delivery as described in the definition of "Collateral" in the SLC loan documents knowing that the Equipment had not even been built, was not under construction at that time and once assembly/construction started six months would be required for delivery.

**Defendants deny each and every of the allegations because they are untrue.  In further answer, Defendants did not know who Plaintiff was, did not know what Plaintiff was thinking, and made no representations to Plaintiff.  The transaction documents and delivery schedule were entered into, and speak for themselves, in establishing the falsity of Plaintiff's allegations.**

131.     Enagon and Ebels had actual knowledge the $2,000,000 was received on the false representation the Collateral/Equipment, had a legitimate MSRP of $4,000,000 and did not then exist which it shared with Schunks but not Duffy.

**Defendants deny the allegations because they are untrue. In further answer, the transaction documents and delivery schedule were entered into, and speak for themselves, in establishing the falsity of Plaintiff's allegations.   In further answer, if Plaintiff attended any meetings with Defendants, he did not identify why he was there and did not participate in the meeting. Defendants had no knowledge of who Plaintiff was. Defendants did not know what Plaintiff was thinking, and made no representations to Plaintiff.**

132.     Klaus did not inform Duffy of the conflict given the obvious misuse of his credit through the guaranty and loans, knowing that Schunks bad if not fraudulent business practices and the small relative size of Enagon could well lead to loss, injury and damage to Duffy.

**Neither admitted nor denied for the reason that Defendant is without sufficient**

**information to respond to this allegation and leaves Plaintiff to its proofs.**

133. Klaus did not direct Duffy that based upon what he knew about Schunks he had

an unwaivable conflict of interest and had he warned Duffy and referred him out to

independent un-conflicted counsel, Duffy would not have purchased the M61

membership interest, made the loans nor signed the SLC guaranty.

**Neither admitted nor denied for the reason that Defendant is without sufficient**

**information to respond to this allegation and leaves Plaintiff to its proofs.**

134. Enagon's wrongful refusal to make the payments under the SLC Equipment loan

despite Ebel's statements to Mike Schunk knowing the Equipment had not been shipped

to M61 and that Duffy had no knowledge of same.

**Defendants deny the allegations because they are untrue. In further answer, the**

**transaction documents and delivery schedule were entered into, and speak for**

**themselves, in establishing the falsity of Plaintiff's allegations. In further answer, if**

**Plaintiff attended any meetings with Defendants, he did not identify why he was**

**there and did not participate in the meeting. Defendants had no knowledge of who**

**Plaintiff was. Defendants did not know what Plaintiff was thinking, and made no**

**representations to Plaintiff. In further answer, Defendants had no obligation to**

**make any payments under the alleged loan.**

135. Klaus' refusal to disclose the Schunks business reputation while giving them

control over Duffy's investment in M61 which led to the misrepresentation that the

Equipment had been delivered when in fact that was deliberately false providing cover to

Schunks, Enagon and Ebels to use Duffy's credit in order to secure the $2,000,000

payment.

**Neither admitted nor denied for the reason that Defendant is without sufficient**
**information to respond to this allegation and leaves Plaintiff to its proofs.**

136.    Enagon, Ebels, Martineau Firm and Klaus' deceit and collusion in this respect

was a blatant violation of the Exchange Act and Rule 10b-5.

**Defendants deny the allegations because they are untrue. In further answer, the**
**transaction documents and delivery schedule were entered into, and speak for**
**themselves, in establishing the falsity of Plaintiff's allegations.   In further answer, if**
**Plaintiff attended any meetings with Defendants, he did not identify why he was**
**there and did not participate in the meeting. Defendants had no knowledge of who**
**Plaintiff was.  Defendants did not know what Plaintiff was thinking, and made no**
**representations to Plaintiff.  The transaction documents and delivery schedule were**
**entered into, and speak for themselves, in establishing the falsity of Plaintiff's**
**allegations.  In further answer, Defendants had no obligation to make any payments**
**under the alleged loan.**

137.    Duffy relied in good faith on Enagon, Ebels, Martineau Firm and Klaus' deceitful

representations as he considered the proposed investment, reasonably believing his SLC

guaranty would not be called because the purported reasonably based income projections

from the biomass processing Equipment were represented to be favorable, that the

Equipment had a legitimate MSRP of $4,000,000, existed and would be delivered at the

time of $2,000,000 payment on March 31, 2020, and thereafter Schunks were skilled

managers who could successfully operate the same.

**Defendants deny the allegations because they are untrue. In further answer, the transaction documents and delivery schedule were entered into, and speak for themselves, in establishing the falsity of Plaintiff's allegations.   In further answer, if Plaintiff attended any meetings with Defendants, he did not identify why he was there and did not participate in the meeting. Defendants had no knowledge of who Plaintiff was.  Defendants did not know what Plaintiff was thinking, and made no representations to Plaintiff.  In further answer, Defendants had no obligation to make any payments under the alleged loan.**

138.    Notwithstanding the Ebels agreement with Schunks to make the SLC loan payments, Enagon and Ebels never intended to make all the payments for the tardy delivery of the Equipment because they either already knew the Equipment had not been delivered or they had no intention of doing so because they intended from the outset to rely on Duffy's guaranty in order to take their time to build the Equipment while relying upon Duffy to make the payments.

**Defendants deny the allegations because they are untrue. In further answer, the transaction documents and delivery schedule were entered into, and speak for themselves, in establishing the falsity of Plaintiff's allegations.   In further answer, if Plaintiff attended any meetings with Defendants, he did not identify why he was there and did not participate in the meeting. Defendants had no knowledge of who Plaintiff was.  In further answer, Defendants did not know what Plaintiff was thinking, and made no representations to Plaintiff. In further answer, Defendants had no obligation to make any payments under the alleged loan.**

139.     Enagon, Ebels, Martineau Firm and Klaus knew the falsity of the foregoing

statements or acted with reckless disregard to their falsity.

**Defendants deny the allegations because they are untrue. In further answer, the**

**transaction documents and delivery schedule were entered into, and speak for**

**themselves, in establishing the falsity of Plaintiff's allegations.   In further answer, if**

**Plaintiff attended any meetings with Defendants, he did not identify why he was**

**there and did not participate in the meeting. Defendants had no knowledge of who**

**Plaintiff was.  Defendants did not know what Plaintiff was thinking, and made no**

**representations to Plaintiff.  In further answer, Defendants had no obligation to**

**make any payments under the alleged loan.**

140.     Duffy reasonably relied on these misrepresentations in both acquiring the M61

membership interest securities, agreeing to provide his personal guaranty of the M61

Equipment Financing Agreement and making the $250,000 in loans. If Duffy had known

the MSRP of $4,000,000 was not legitimate or there had been no intention or plan to

promptly deliver the Equipment, he would have declined the offer to invest in the M61

membership interests, would not have signed the Guaranty and would not have made the

loans.

**Defendants deny the allegations because they are untrue. In further answer, the**

**transaction documents and delivery schedule were entered into, and speak for**

**themselves, in establishing the falsity of Plaintiff's allegations.   In further answer, if**

**Plaintiff attended any meetings with Defendants, he did not identify why he was**

**there and did not participate in the meeting. Defendants did not know what Plaintiff**

**was thinking, and made no representations to Plaintiff. In further answer,**

**Defendants had no obligation to make any payments under the alleged loan.**

## COUNT IV

### ALLEGED VIOLATION OF SECTION 20(a) OF SECURITIES ACT

141.     Plaintiff re-alleges and incorporates the foregoing paragraphs as if fully set forth

herein.

**Defendants reallege the foregoing paragraphs.**

142.     Defendants Enagon, Ebels, Martineau Firm and Klaus were control persons as to

M61 in that without Enagon's agreement to sell and deliver the processing Equipment

as above described, it was impossible for M61 to assume the role of a going concern

and it would necessarily default on the SLC Equipment Financing agreement and fail.

**Defendants deny each and every of the allegations because they are untrue.  In**

**further answer, Defendants had no control over M61, and had no knowledge of**

**M61's financial condition.  In further answer, the transaction documents and**

**delivery schedule were entered into, and speak for themselves, in establishing the**

**falsity of Plaintiff's allegations.   In further answer, if Plaintiff attended any**

**meetings with Defendants, he did not identify why he was there and did not**

**participate in the meeting. Defendants had no knowledge of who Plaintiff was.**

143.     These defendants knew all this and knew they had the power of complete

control over M61, and did exercise and assert such control as it suited their plans.

**Defendants deny each and every of the allegations because they are untrue.  In**

**further answer, Defendants did not know who Plaintiff was, did not know what**

**Plaintiff was thinking, and made no representations to Plaintiff. The transaction documents and delivery schedule were entered into, and speak for themselves, in establishing the falsity of Plaintiff's allegations. In further answer, Defendants had no knowledge of whether Plaintiff could be actively involved and had no reason to solicit his involvement. In further answer, Defendants had no control over M61, and had no knowledge of M61's financial condition. In further answer, Defendants had no control over M61, and had no knowledge of M61's financial condition.**

144. One such instance was their decision to waive the initial material requirement that Enagon deliver Equipment with a legitimate MSRP of $4,000,000 and that the Equipment be delivered to M61 upon receipt of the March 31, 2020 payment of the $2,000,000 from the SLC loan. A third is the requirement that the relatively small and new Enagon escrow the $2,000,000 funding so that draws would only be made based upon progress. **Defendants deny each and every of the allegations because they are untrue. In further answer, Defendants did not know who Plaintiff was, did not know what Plaintiff was thinking, and made no representations to Plaintiff. The transaction documents and delivery schedule were entered into, and speak for themselves, in establishing the falsity of Plaintiff's allegations. In further answer, Defendants had no knowledge of whether Plaintiff could be actively involved and had no reason to solicit his involvement. In further answer, Defendants had no control over M61, and had no knowledge of M61's financial condition. In further answer, Defendants had no control over M61, and had no knowledge of M61's financial condition.**

145.      These defendants had the power to exercise control and did exercise control of M61 as it suited their purposes. Such control manifested itself in instances as related above.

**Defendants deny each and every of the allegations because they are untrue.  In further answer, Defendants did not know who Plaintiff was, did not know what Plaintiff was thinking, and made no representations to Plaintiff.  The transaction documents and delivery schedule were entered into, and speak for themselves, in establishing the falsity of Plaintiff's allegations.  In further answer, Defendants had no knowledge of whether Plaintiff could be actively involved and had no reason to solicit his involvement. In further answer, Defendants had no control over M61, and had no knowledge of M61's financial condition.  In further answer, Defendants had no control over M61, and had no knowledge of M61's financial condition.**

146.      By virtue of their status as control persons, these defendants are jointly and severally liable to Duffy for all damages related to said defendants' primary violations of Section 10(b) and Rule 10b-5 set forth above.

**Defendants deny each and every of the allegations because they are untrue.  In further answer, Defendants did not know who Plaintiff was, did not know what Plaintiff was thinking, and made no representations to Plaintiff.  The transaction documents and delivery schedule were entered into, and speak for themselves, in establishing the falsity of Plaintiff's allegations.  In further answer, Defendants had no knowledge of whether Plaintiff could be actively involved and had no reason to solicit his involvement. In further answer, Defendants had no control over M61, and had no knowledge of M61's financial condition.**

## COUNT V

## ALLEGED VIOLATION OF WASHINGTON CONSUMER PROTECTION ACT

147.	Plaintiff re-alleges and incorporates the foregoing paragraphs as if fully set forth

herein.

**Defendants reallege the foregoing paragraphs.**

148.	The actions of Enagon, Ebels, Martineau Firm and Klaus in their solicitation and

facilitation of Duffy's M61 membership interest investment coupled with the requirement

of his personal guaranty of the biomass processing Equipment, his loans and such parties'

failure to disclose the material and operative facts that (a) the $4,000,000 MSRP was not

legitimate, (b) Enagon would have six months to deliver the Equipment to M61 following

receipt of SLC's $2,000,000 payment, but that ( c) there would be no loan payment grace

period pending delivery of the Equipment such that (d) notwithstanding such delay in

delivery of the Equipment, the borrower's obligation to pay monthly loan payments of

$106,000 would commence upon Enagon's receipt of SLC's $2,000,000 payment, and (e)

that the practical effect of such arrangement would be SLC's call on Duffy to honor his

guaranty, thereby effectively nullifying the assurances and other representations, as above

alleged, the control group made to Duffy during the February 26 through 28 2020

meetings, inspection and demonstration of the Enagon processing sonic mill that Duffy

attended.

**Defendants deny each and every of the allegations because they are untrue.  In**

**further answer, Defendants did not know who Plaintiff was, did not know what**

**Plaintiff was thinking, and made no representations to Plaintiff.  The transaction documents and delivery schedule were entered into, and speak for themselves, in establishing the falsity of Plaintiff's allegations.  In further answer, Defendants had no knowledge of whether Plaintiff could be actively involved and had no reason to solicit his involvement.**

149.     The foregoing, Duffy alleges, constituted deceptive and/or unfair acts or practices of the control group persons and entities, defendants herein, in the conduct of a trade or commerce, all of which were violations of RCW 19.86.020.

**Defendants deny each and every of the allegations because they are untrue.  In further answer, Defendants did not know who Plaintiff was, did not know what Plaintiff was thinking, and made no representations to Plaintiff.  The transaction documents and delivery schedule were entered into, and speak for themselves, in establishing the falsity of Plaintiff's allegations.  In further answer, Defendants had no knowledge of whether Plaintiff could be actively involved and had no reason to solicit his involvement.**

150.     As advisors to and aiders and abettors of one another Enagon, Ebels, Martineau Firm and Klaus all participated in or knowingly approved such conduct of one another and consistent with established authority are each and all jointly and severally subject to personal liability for the loss, injury and damages Duffy has incurred. *Grayson v. Nordic Const. Co., Inc.*, 92 Wn.2d 548, 554, 599 P.2d 1271 (1979).

**Defendants deny each and every of the allegations because they are untrue.  In further answer, Defendants did not know who Plaintiff was, did not know what Plaintiff was thinking, and made no representations to Plaintiff.  The transaction**

**documents and delivery schedule were entered into, and speak for themselves, in establishing the falsity of Plaintiff's allegations.  In further answer, Defendants had no knowledge of whether Plaintiff could be actively involved and had no reason to solicit his involvement.**

151.     Further, this action affects the public interest because Enagon, Ebels, Martineau Firm and Klaus have, on information and belief, caused loss, injury, damage and harm to other persons and/or entities in the same manner as they have Duffy. *Bavand v. OneWest Bank*, 196 Wn.App. 813, 385 P.3d 233 (2016). Duffy so alleges because, on information and belief, the control group persons and entities actively proffered the same or similar investment structure to others that they used to deceive Duffy.

**Defendants deny each and every of the allegations because they are untrue.  In further answer, Defendants did not know who Plaintiff was, did not know what Plaintiff was thinking, and made no representations to Plaintiff.  The transaction documents and delivery schedule were entered into, and speak for themselves, in establishing the falsity of Plaintiff's allegations.  In further answer, Defendants had no knowledge of whether Plaintiff could be actively involved and had no reason to solicit his involvement.**

152.     The unfair and deceptive acts and practices of these defendants proximately caused Duffy to suffer loss, injury and damage of not less than $2,000,000 plus costs and attorney fees.

**Defendants deny each and every of the allegations because they are untrue.  In further answer, Defendants did not know who Plaintiff was, did not know what Plaintiff was thinking, and made no representations to Plaintiff.  The transaction**

**documents and delivery schedule were entered into, and speak for themselves, in establishing the falsity of Plaintiff's allegations.  In further answer, Defendants had no knowledge of whether Plaintiff could be actively involved and had no reason to solicit his involvement.**

153.     Further, pursuant to RCW § 19.86.090, Duffy is entitled recover damages in an amount to be proven at trial, plus treble damages up to $25,000.

**Defendants deny each and every of the allegations because they are untrue.  In further answer, Defendants did not know who Plaintiff was, did not know what Plaintiff was thinking, and made no representations to Plaintiff.  The transaction documents and delivery schedule were entered into, and speak for themselves, in establishing the falsity of Plaintiff's allegations.  In further answer, Defendants had no knowledge of whether Plaintiff could be actively involved and had no reason to solicit his involvement.**

## COUNT VI

## ALLEGED NEGLIGENT MISREPRESENTATION

154.     Plaintiff re-alleges and incorporates the foregoing paragraphs as if fully set forth herein.

**Defendants reallege the foregoing paragraphs.**

155.     Enagon, Ebels, Martineau Firm and Klaus and each of them, falsely informed Duffy and omitted material information, leading Duffy to understand and believe that the MSRP of the Equipment was a legitimate $4,000,000 and that when SLC paid Enagon the initial $2,000,000, Enagon would promptly deliver the bio-mass processing Equipment to M61 and that M61would promptly commence its biomass processing business, operated

64

by reasonably competent and trustworthy managers the Schunks, such that the three sonic mills would generate cash flow sufficient to make monthly loan payments to SLC, repay the loans and earn a return for investors.

**Defendants deny each and every of the allegations because they are untrue.  In further answer, Defendants did not know who Plaintiff was, did not know what Plaintiff was thinking, and made no representations to Plaintiff.  The transaction documents and delivery schedule were entered into, and speak for themselves, in establishing the falsity of Plaintiff's allegations.  In further answer, Defendants had no knowledge of whether Plaintiff could be actively involved and had no reason to solicit his involvement.**

156.    Duffy reasonably relied on Enagon, Ebels, Martineau Firm and Klaus' representations, and was unaware of and unable to know of Enagon, Ebels, Martineau Firm and Klaus' material omission regarding the legitimate MSRP of the Equipment and M61's Equipment delivery date, the false statements about forecast operations, and that Schunks were incapable of managing the business and were untrustworthy, that Enagon was a relatively small company with no experience at the contemplated Equipment level and these false representations and material omissions proximately caused Duffy to agree to purchase 34% of the membership interests in M61, to sign the SLC guaranty as above alleged, to imprudently provide a personal guaranty to SLC that M61 would timely pay the processing Equipment loan payments and to provide the loans.

**Defendants deny each and every of the allegations because they are untrue.  In further answer, Defendants did not know who Plaintiff was, did not know what Plaintiff was thinking, and made no representations to Plaintiff.  The transaction**

65

**documents and delivery schedule were entered into, and speak for themselves, in establishing the falsity of Plaintiff's allegations.  In further answer, Defendants had no knowledge of whether Plaintiff could be actively involved and had no reason to solicit his involvement.**

157.     Defendants knew or are charged with knowledge that Duffy relied on them and each of them to give him true and complete information regarding the legitimacy of the MSRP and suitability of his M61 investment, his guaranty of payments regarding M61's Equipment purchase from Enagon with the SCL financing and the loans.

**Defendants deny each and every of the allegations because they are untrue.  In further answer, Defendants did not know who Plaintiff was, did not know what Plaintiff was thinking, and made no representations to Plaintiff.  The transaction documents and delivery schedule were entered into, and speak for themselves, in establishing the falsity of Plaintiff's allegations.  In further answer, Defendants had no knowledge of whether Plaintiff could be actively involved and had no reason to solicit his involvement.**

158.     As the direct and proximate result of the misrepresentations and material omissions alleged above, Duffy has suffered loss, injury, and damage in an amount to be proven at trial.

**Defendants deny each and every of the allegations because they are untrue.  In further answer, Defendants did not know who Plaintiff was, did not know what Plaintiff was thinking, and made no representations to Plaintiff.  The transaction documents and delivery schedule were entered into, and speak for themselves, in establishing the falsity of Plaintiff's allegations.  In further answer, Defendants had**

**no knowledge of whether Plaintiff could be actively involved and had no reason to solicit his involvement.**

## COUNT VII

## ALLEGED INTENTIONAL MISREPRESENTATION

159.     Plaintiff re-alleges and incorporates the foregoing paragraphs as if fully set forth herein.

**Defendants reallege the foregoing paragraphs.**

160.     As above alleged, Enagon, Ebels, Martineau Firm and Klaus materially misrepresented facts related to, and concealed from Duffy material facts regarding, the Equipment MSRP of $4,000,000, the effect of Duffy's personal guaranty vis-a-vis the delivery date of the bio-mass Equipment to M61 as related to the commencement of monthly loan payments, the false statements about forecast operations, that Enagon was of relatively small size for the contemplated purchase, that Schunks were incapable of managing the business and were untrustworthy, and the effect of all such factors on Duffy's liability on the personal guaranty to SLC.

**Defendants deny each and every of the allegations because they are untrue.  In further answer, Defendants did not know who Plaintiff was, did not know what Plaintiff was thinking, and made no representations to Plaintiff.  The transaction documents and delivery schedule were entered into, and speak for themselves, in establishing the falsity of Plaintiff's allegations.  In further answer, Defendants had no knowledge of whether Plaintiff could be actively involved and had no reason to solicit his involvement.**

161.     Duffy reasonably relied on such representations, and other related misrepresentations and material omissions as alleged above.

**Defendants deny each and every of the allegations because they are untrue.  In further answer, Defendants did not know who Plaintiff was, did not know what Plaintiff was thinking, and made no representations to Plaintiff.  The transaction documents and delivery schedule were entered into, and speak for themselves, in establishing the falsity of Plaintiff's allegations.  In further answer, Defendants had no knowledge of whether Plaintiff could be actively involved and had no reason to solicit his involvement.**

162.     As the direct and proximate result of Duffy's reliance upon such representations and material omissions, Duffy has suffered loss, injury and damage in an amount to be proven at trial.

**Defendants deny each and every of the allegations because they are untrue.  In further answer, Defendants did not know who Plaintiff was, did not know what Plaintiff was thinking, and made no representations to Plaintiff.  The transaction documents and delivery schedule were entered into, and speak for themselves, in establishing the falsity of Plaintiff's allegations.  In further answer, Defendants had no knowledge of whether Plaintiff could be actively involved and had no reason to solicit his involvement.**

163.     In doing the acts alleged, defendants acted with oppression, fraud, and malice, and Plaintiff is entitled to punitive and exemplary damages in amount to be determined according to proof at the time of trial.

68

**Defendants deny each and every of the allegations because they are untrue.  In further answer, Defendants did not know who Plaintiff was, did not know what Plaintiff was thinking, and made no representations to Plaintiff.  The transaction documents and delivery schedule were entered into, and speak for themselves, in establishing the falsity of Plaintiff's allegations.  In further answer, Defendants had no knowledge of whether Plaintiff could be actively involved and had no reason to solicit his involvement.**

## COUNT VIII

### ALLEGED PROMISSORY FRAUD

164.     Plaintiff re-alleges and incorporates the foregoing paragraphs as if fully set forth herein.

**Defendants reallege the foregoing paragraphs.**

165.         The false representations of Enagon and Ebels were that: The three sonic mills, the Equipment, had a legitimate MSRP of $4,000,000;

The sonic mills were based upon a patent held by Enagon;

The bio-mass Equipment would actually be suitable for the hemp market as demonstrated in the February 26, 2020 meeting described above;

The Equipment would efficiently and appropriately produce a product as hemp powder that would be commercially viable;

Enagon's sale of the bio-mass Equipment to M61 was congruent with its $2,000,000 payment on March 31, 2020, or

Enagon's decision to intentionally omit such facts in discussions with Duffy, and

69

Enagon's failure to inform Duffy there could be a six-month gap between the SLC
$2,000,000 payment date and delivery of the Equipment to M61, and that the absence of
any such congruence would not excuse Duffy's obligation under his guaranty to SLC to
hold it harmless from M61's inability to operate and be unable to pay the loan payment
because Enagon had not delivered the bio-mass Equipment that was central to M61's
business plan.

**Defendants deny each and every of the allegations because they are untrue.  In
further answer, Defendants did not know who Plaintiff was, did not know what
Plaintiff was thinking, and made no representations to Plaintiff.  The transaction
documents and delivery schedule were entered into, and speak for themselves, in
establishing the falsity of Plaintiff's allegations.  In further answer, Defendants had
no knowledge of whether Plaintiff could be actively involved and had no reason to
solicit his involvement. Defendants did not have a duty to cause Plaintiff to be
informed by his business partners.**

166.    And the timing of the M61 business plan vis-a-vis the obligation Enagon, and
Ebels urged Duffy to incur was the crucial element in Duffy's decision regarding his
purchase of 34% of the membership interests of M61, the SLC guaranty and the loans.

**Defendants deny each and every of the allegations because they are untrue.  In
further answer, Defendants did not know who Plaintiff was, did not know what
Plaintiff was thinking, and made no representations to Plaintiff.  The transaction
documents and delivery schedule were entered into, and speak for themselves, in
establishing the falsity of Plaintiff's allegations.  In further answer, Defendants had**

**no knowledge of whether Plaintiff could be actively involved and had no reason to solicit his involvement.**

167.       Duffy reasonably relied on such representations, and other related misrepresentations and material omissions as alleged above.

**Defendants deny each and every of the allegations because they are untrue.  In further answer, Defendants did not know who Plaintiff was, did not know what Plaintiff was thinking, and made no representations to Plaintiff.  The transaction documents and delivery schedule were entered into, and speak for themselves, in establishing the falsity of Plaintiff's allegations.  In further answer, Defendants had no knowledge of whether Plaintiff could be actively involved and had no reason to solicit his involvement.**

168.       Enagon and Ebels intended that Duffy rely on such misrepresentations omissions and intended to misinform him regarding the MSRP and the immediate liability they were urging him to incur by acquiring the M61 membership interests which required the signing and delivery of his personal guaranty of the $2,000,000 SLC loan.

**Defendants deny each and every of the allegations because they are untrue.  In further answer, Defendants did not know who Plaintiff was, did not know what Plaintiff was thinking, and made no representations to Plaintiff.  The transaction documents and delivery schedule were entered into, and speak for themselves, in establishing the falsity of Plaintiff's allegations.  In further answer, Defendants had no knowledge of whether Plaintiff could be actively involved and had no reason to solicit his involvement.**

169.     As alleged, Duffy did, as alleged, rely and act to his detriment on such
misrepresentations and the omission of material information.

**Defendants deny each and every of the allegations because they are untrue.  In
further answer, Defendants did not know who Plaintiff was, did not know what
Plaintiff was thinking, and made no representations to Plaintiff.  The transaction
documents and delivery schedule were entered into, and speak for themselves, in
establishing the falsity of Plaintiff's allegations.  In further answer, Defendants had
no knowledge of whether Plaintiff could be actively involved and had no reason to
solicit his involvement.**

170.     In so doing, Duffy suffered loss, injury and damage according to proof at trial.

**Defendants deny each and every of the allegations because they are untrue.  In
further answer, Defendants did not know who Plaintiff was, did not know what
Plaintiff was thinking, and made no representations to Plaintiff.  The transaction
documents and delivery schedule were entered into, and speak for themselves, in
establishing the falsity of Plaintiff's allegations.  In further answer, Defendants had
no knowledge of whether Plaintiff could be actively involved and had no reason to
solicit his involvement.**

171.     In doing the acts alleged, defendant acted with oppression, fraud, and malice, and
Plaintiff is entitled to punitive and exemplary damages in an amount to be determined
according to proof at the time of trial.

**Defendants deny each and every of the allegations because they are untrue.  In
further answer, Defendants did not know who Plaintiff was, did not know what
Plaintiff was thinking, and made no representations to Plaintiff.  The transaction**

**documents and delivery schedule were entered into, and speak for themselves, in establishing the falsity of Plaintiff's allegations.  In further answer, Defendants had no knowledge of whether Plaintiff could be actively involved and had no reason to solicit his involvement.**

## COUNT IX

### ALLEGED MALPRACTICE

This Count is not against these Defendants, and therefore no answer is required.

## COUNT X

### ALLEGED BREACH OF FIDUCIARY DUTY

This Count is not against these Defendants, and therefore no answer is required.

## COUNT XI

### ALLEGED EQUITABLE INDEMNIFICATION

228.      Plaintiff re-alleges and incorporates the foregoing paragraphs as if fully set forth herein.

**Defendants reallege the foregoing paragraphs.**

229.      Plaintiff alleges that Enagon and Ebels negligently or intentionally misrepresented the Equipment related $4,000,000 MSRP, the delivery date, performance and forecast operation of the Equipment that was purchased on March 27, 2020 by M61, as described above. Enagon was paid on March 31, 2020 the sum of $2,000,000.

**Defendants deny each and every of the allegations because they are untrue.  In further answer, Defendants did not know who Plaintiff was, did not know what Plaintiff was thinking, and made no representations to Plaintiff.  The transaction**

**documents and delivery schedule were entered into, and speak for themselves, in establishing the falsity of Plaintiff's allegations. In further answer, Defendants had no knowledge of whether Plaintiff could be actively involved and had no reason to solicit his involvement.**

230.     Duffy was not negligent or otherwise guilty of any fault in connection with the negligent performance of and Enagon's representations regarding its contract performance in the development and construction of the Equipment and its delivery dates pursuant to the M61 purchase and loan.

**Defendants deny each and every of the allegations because they are untrue. In further answer, Defendants did not know who Plaintiff was, did not know what Plaintiff was thinking, and made no representations to Plaintiff. The transaction documents and delivery schedule were entered into, and speak for themselves, in establishing the falsity of Plaintiff's allegations. In further answer, Defendants had no knowledge of whether Plaintiff could be actively involved and had no reason to solicit his involvement. In further answer, Defendants deny that Plaintiff was not negligent inasmuch as he failed on numerous occasions to exercise reasonable care and diligence.**

231.     Duffy was sued on his SLC loan Guaranty of the M61 Equipment financing in the Colorado Action for in excess of $2,200,000 plus attorneys fees and costs.

**Neither admitted nor denied for the reason that Defendant is without sufficient information to respond to this allegation and leaves Plaintiff to its proofs.**

232.     Duffy has been forced to settle with SLC on his Guaranty in SLC's Colorado Action for $1,250,000 rather than risk a judgment in excess of $2,200,000.

**Neither admitted nor denied for the reason that Defendant is without sufficient information to respond to this allegation and leaves Plaintiff to its proofs. In further answer, Defendants state that Plaintiff was negligent inasmuch as he failed on numerous occasions to exercise reasonable care and diligence.**

233.     Duffy is now entitled to indemnity from Enagon and Ebels, and each of them, for the sum of $1,250,000 plus his attorneys fees and costs as a result of Duffy being sued on his Guaranty because of the conduct of Enagon and Ebels and each of them, which conduct was the proximate and actual cause and reason for Duffy's settlement in the Colorado Action.

**Defendants deny each and every of the allegations because they are untrue.  In further answer, Defendants did not know who Plaintiff was, did not know what Plaintiff was thinking, and made no representations to Plaintiff.  The transaction documents and delivery schedule were entered into, and speak for themselves, in establishing the falsity of Plaintiff's allegations.  In further answer, Defendants had no knowledge of whether Plaintiff could be actively involved and had no reason to solicit his involvement.  In further answer, Defendants deny that Plaintiff was not negligent inasmuch as he failed on numerous occasions to exercise reasonable care and diligence.**

234.     By the filing of this Complaint and service on Enagon and Ebels, Duffy hereby notifies said defendants of his tender of indemnity regarding the payment to settle the SLC Colorado Action.

**Defendants deny each and every of the allegations because they are untrue.  In further answer, Defendants did not know who Plaintiff was, did not know what**

**Plaintiff was thinking, and made no representations to Plaintiff.  The transaction documents and delivery schedule were entered into, and speak for themselves, in establishing the falsity of Plaintiff's allegations.  In further answer, Defendants had no knowledge of whether Plaintiff could be actively involved and had no reason to solicit his involvement.  In further answer, Defendants deny that Plaintiff was not negligent inasmuch as he failed on numerous occasions to exercise reasonable care and diligence.  In further answer, even if Plaintiff had any claim against Defendants, Plaintiff has failed to timely act and has waived any claims he may have.**

235.      It will be inequitable, and Enagon and Ebels will be unjustly enriched at Duffy's expense if said defendants are not held to account for the loss, injury and damage Duffy suffered from having to settle the Colorado Action.

**Defendants deny each and every of the allegations because they are untrue.  In further answer, Defendants did not know who Plaintiff was, did not know what Plaintiff was thinking, and made no representations to Plaintiff.  The transaction documents and delivery schedule were entered into, and speak for themselves, in establishing the falsity of Plaintiff's allegations.  In further answer, Defendants had no knowledge of whether Plaintiff could be actively involved and had no reason to solicit his involvement.  In further answer, Defendants deny that Plaintiff was not negligent inasmuch as he failed on numerous occasions to exercise reasonable care and diligence.  In further answer, even if Plaintiff had any claim against Defendants, Plaintiff has failed to timely act and has waived any claims he may have.**

76

WHEREFORE, Defendants pray that their answer be deemed good and sufficient and all claims by Plaintiff against Defendants be dismissed, with prejudice, and such other and further relief, legal and equitable, including attorney's fees, be awarded Defendants.

Dated: March 24, 2022    Respectfully submitted,

        MARK H. ZIETLOW & ASSOCIATES, PLC

        __ /s/ Mark H. Zietlow_____
        Mark H. Zietlow (P37022)
        Attorney for Defendants Enagon LLC and Terrance L. Ebels
        388 Garden Ave., Suite 140
        Holland, Michigan 49424
        (616) 392-4100
        mark@innovative.lawyer

## **AFFIRMATIVE DEFENSES**

1. The Counts in the Complaint fail to state a claim upon which relief may be granted.

2. After Plaintiff unreasonably invested and/or loaned funds to Amerihemp, with no recovery, Plaintiff unreasonably invested in and/or loaned funds to M61.

3. Plaintiff's alleged loss was caused by his failure to see that M61 had no operating history, no cash flow, and uncertain ability to obtain adequate revenue.

4.  Plaintiff unreasonably invested in an entity that lacked cash flow and the ability to make payments on debt.

5.  Plaintiff's claims are barred by the terms of the written sale documents.

6.  Plaintiff's claims are barred by the written delivery schedule.

7.  The delivery of equipment was delayed due to a pandemic and national emergency declared by the United States Government.

8.  Upon information and belief, M61 lacked facilities to properly use the equipment.

9.  Upon information and belief, M61 did not utilize the equipment for the intended purpose.

10. Upon information and belief, M61 abused and misused equipment, and was consequently unable to make payments on debt or attain profitability.

11. M61 and its agents and representatives damaged some of the equipment, rendering it incapable of operating properly because of its diminished capability.

12. M61 and its agents and representatives damaged some of the equipment, rendering some of it with significantly reduced value.

13. Upon information and belief, Plaintiff failed to require SLC to use commercially reasonable steps to foreclose upon the equipment.

14. Upon information and belief, Plaintiff failed to require SLC to use commercially reasonable steps to prepare the equipment for resale and resell the equipment.

15. Defendants did not know who Plaintiff was, and therefore could not have acted with malice, bad faith, or scienter toward Plaintiff.

16. Defendants owed no duty to Plaintiff.

17. Plaintiff fails to state with required specificity the alleged representations that he claims Defendants made.

18. Defendants made no representations directed to Plaintiff.

19. Plaintiff should have asked and known the requirements of Sweet Leaf Capital before or at the time Plaintiff signed any agreement or document with Sweet Leaf Capital.

20. Plaintiff fails to establish that any representations made by Defendants were materially false.

21. Upon belief, Plaintiff caused any loss by failing to make financial contributions to one or more entities that he was expected to provide assistance to.

22. At all times, Defendants acted in good faith and had reasonable grounds for believing their actions were in compliance with the Securities Exchange Act of 1934 and applicable law.

23. Plaintiff has not alleged facts that establish Defendants violated any federal or state laws.

24. Defendants did not know or show reckless disregard for whether their conduct was prohibited by the Securities Exchange Act of 1934 and applicable law.

25. All actions taken by Defendants with respect to Plaintiff were supported by legitimate business reasons.

26. Plaintiff's claims are barred in part or in whole by Plaintiff's prior breaches.

27. Plaintiff's claims are barred in part or in whole by Plaintiff's tortious conduct and/or unclean hands.

28. Plaintiff's claims are barred in whole or in part because of Plaintiff's errors and or omissions.

29. Plaintiff's claims are barred in whole or in part by waiver.

30. Plaintiff's claims are barred in whole or in part because Plaintiff consented to Defendants' conduct.

31. Plaintiff has failed to mitigate damages, if any.

32. Plaintiff's claims are barred by contributory negligence.

33. Plaintiff's claims are barred by assumption of risk.

34. Plaintiff's claims are barred by his own fraud.

35. Plaintiff's claims are barred by the statute of limitations.

36. Plaintiff's claims are barred by estoppel.

37. Defendants reserve the right to assert additional affirmative defenses as discovery

progresses, and at the end of discovery.

WHEREFORE, Defendants pray that their answer be deemed good and sufficient and all claims

by Plaintiff against Defendants be dismissed, with prejudice, and such other and further relief,

legal and equitable, including attorney's fees, be awarded Defendants.

I declare that the statements above are true to the best of my information, knowledge, and belief.

Dated: March 24, 2022                          Respectfully submitted,

MARK H. ZIETLOW & ASSOCIATES

   /s/ Mark H. Zietlow
Mark H. Zietlow (P37022)
Attorney for Defendants Enagon and
Terrance L. Ebels
388 Garden Ave., Suite 140
Holland, Michigan 49424
(616) 392-4100
mark@innovative.lawyer